ALBERT WISNER *et al.*

*v.*

MAGGIE E. CHAMBERLIN.

*Filed at Ottawa May 15, 1886.*

1. ACCELERATING MATURITY OF DEBT—*for non-performance of conditions.* Where a mortgage with a power of sale, given to secure the payment of many notes given for the purchase money of the mortgaged premises, fails to show that any of the notes were given for the interest falling due on each year for the principal, and providing that in case of default of payment of any note for thirty days after its maturity, the mortgagee may declare all the notes due, and sell the property in payment of the same, and the premises are sold for the amount of all the notes, including some given for unearned interest, a purchaser will have the right to regard all the notes as being for the principal, and therefore rightfully declared due.

2. And where the mortgage contains an express covenant that all the notes may be declared due on default in the payment of any one of them for a certain time after due, the fact that the payment of one note, not due, depends upon the mortgagee's procuring a certain outstanding portion of the title for the mortgagor, will not prevent the former from declaring such note due on failure to pay any of the prior notes within the time fixed, they being subject to no conditions, and on declaring all the notes due a sale may be had for the entire debt.

3. LIMITATION—*act of 1839—prerequisites to a bar—as to land exempt from taxation.* Seven years' possession of land under color of title, accompanied with the payment of taxes, bars an assertion of title, under the Limitation act of 1839: When the property is exempt from taxation, there are no taxes to pay, and the statute does not apply. Seven years' possession, under color of title, of property exempt from taxation, is no bar under the statute.

4. TAX TITLE—*stricti juris.* The title to be made under a tax deed is one *stricti juris.* Therefore, a non-compliance with anything the law makes a condition precedent to the right to have a deed, is fatal, and the court will not look to see whether the omission has misled or injured any one or not.

5. SAME—*conditions precedent to the validity of a tax deed—as to the notice, and affidavit thereof.* The statute requires, as conditions precedent to the validity of a tax deed, that the purchaser, before receiving the same, shall serve a notice on every person in possession of the premises three months before the expiration of the time of redemption, in which shall be stated correctly when the time of redemption will expire, and make and file an affidavit with the person authorized to make the deed, showing particularly the facts relied on as showing a compliance with the statute, and the filing

and entering of such affidavit of record in the proper office. A mistake in the notice as to the time when the redemption will expire, is fatal to the validity of the deed; and whether the date named is later or earlier than the time the redemption actually expires, makes no difference.

6. An affidavit for the purpose of obtaining a tax deed, stated that on April 19, 1881, the South Park commissioners were in the actual possession of the premises, and that on May 20, 1881, a copy of the notice of the purchase, stating when the time of redemption would expire, was delivered to such commissioners: *Held,* that the affidavit was fatally defective, in failing to show who were in possession on May 20, 1881, when the notice was served; and this defect could not be cured by evidence *aliunde,* showing the commissioners were still in possession when the notice was served. The affidavit itself must state the facts.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding.

On October 27, 1882, Maggie E. Chamberlin, the defendant in error, filed her petition in the circuit court of Cook county, under what is commonly known as the Burnt Records act, to establish her title to the east half of lot 8, block 2, in Yerby's subdivision of the north half of the north half of the northwest quarter, and the west half of the north-east quarter, of section 15, township 38 north, range 14 east, making defendants a number of parties, all of whom made default, except Albert Wisner and the South Park commissioners, the plaintiffs in error herein. The South Park commissioners claim title to the north one hundred and thirty-four feet, and Wisner to the remainder of the half lot. Both plaintiffs and defendant in error claim title through one Amelia Wiltberger, who acquired title in June, 1852, and died intestate some time in that year, leaving her surviving, her husband, Joseph W. Wiltberger, and six childern, three of whom were minors, the youngest, a daughter, having been born October 30, 1848.

By decree of the Cook circuit court, rendered May 29, 1857, at the suit of Joseph W. Wiltberger, where all of said children were made defendants, it was decreed that an undivided half of the property, afterwards subdivided by Yerby, was vested in Joseph W., and one-half in the children. By deed

dated November 18, 1858, and recorded the next day, Joseph W. Wiltberger and the adult children conveyed the property to Jesse Embree, which deed was also executed by Joseph W. Wiltberger, as guardian of the minor children. The consideration recited was $94,550. The deed contained covenants by the father and the adult children, of seizin, of right to convey, of freedom from incumbrance, and of general warranty in peaceable possession.

By mortgage dated November 18, and recorded November 19, 1858, Jesse Embree conveyed the same premises to Joseph W. Wiltberger, to secure payment of the unpaid part of the purchase money for the property, to-wit, $91,200, which was evidenced by nineteen notes, eighteen of which were for the sum of $2400 each, and one for $48,000, without interest. Two of the eighteen notes were payable on the first day of January of each year, beginning with 1859, and ending 1867, and the $48,000 note was payable January 1, 1868. The mortgage contained the condition, that if default was made in the payment of any of said promissory notes for such periods as were in the mortgage specified, then "the whole sum remaining unpaid shall immediately become due and payable, as in said promissory notes expressed;" and then the mortgagee, as attorney in fact of the mortgagor, might sell and convey the premises. The nineteenth note was as follows:

"$48,000.               CHICAGO, *November 18, 1858.*

"On the first (1st) day of January, A. D. 1868, I promise to pay to the order of Joseph W. Wiltberger, $48,000, value received. This note is given to the ratification of the sale and conveyance of their part, being one-fourth of a part of section 15, in township 38, north, range 14, east of the third P. M., described in a deed bearing even date herewith, between Joseph W. Wiltberger and others, to Jesse Embree, by the minor heirs of Joseph W. Wiltberger, named as follows: Charles Lewis, Joseph Samuel, and Laura Ann Wiltberger, and is to be paid when due, if said minors before that time

shall have conveyed their interest so as to pass all their right, title and interest in and to said premises in said deed described, to the said Jesse Embree, his heirs, executors, administrators or assigns, and is to be paid any time thereafter when said minors shall well and truly convey their interest in fee, as above described, to said Jesse Embree, his heirs, executors, administrators or assigns, so that it will inure to his or their benefit. JESSE EMBREE."

On May 9, 1862, Joseph W. Wiltberger published a notice of mortgage sale, in which he stated that default had been made in the payment of seven of said notes, and that he would sell, June 10, 1862, the premises in the mortgage described, to pay said indebtedness. By deed dated June 30, 1862, Joseph W. Wiltberger, describing himself as mortgagee, conveyed the premises to Egbert W. Wiltberger, the deed being acknowledged and recorded September 16, 1862, and it being recited therein, that at the mortgagee's sale the forty acre tract was first sold to Egbert W. Wiltberger for $400 per acre, and then the eighty acre tract was sold to him for $400 per acre, and that in consideration of the sum of $48,000, the two tracts were conveyed. In the deed it is recited that the whole of the notes were declared due. By quitclaim deed dated September 4, 1862, and recorded September 17, 1862, Egbert conveyed back the two tracts to Joseph W. Wiltberger, and by deeds dated, respectively, February 4, 1863, January 13, 1865, and November 4, 1865, Charles Lewis, Joseph Samuel, and Laura Ann Wiltberger, the minor heirs, respectively, quitclaimed the said premises to Joseph W. Wiltberger. The Wiltberger title to lot 8, block 2, remained in Joseph W. Wiltberger till January 22, 1863, when he conveyed, by warranty deed, said lot to Daniel H. Carpenter, the deed being recorded January 26, 1863; Carpenter, by warranty deed dated January 20, 1864, and recorded February 25, 1865, conveyed the lot to Mary Todd,

who, by warranty deed dated September 21, 1865, and recorded September 23, 1865, conveyed the east half of the lot to William Galway, trustee, who conveyed the same to defendant in error by deed dated August 28, 1880. In 1857 the whole of the land described in the mortgage was subdivided by Yerby, an agent for Embree, which subdivision has been adopted by all parties ever since.

Plaintiffs' in error claim of title is derived as follows: By warranty deed dated August 19, 1859, recorded March 8, 1861, Embree conveyed to Amos F. Tompkins numerous lots, including said lot 8. By quitclaim deed dated May 25, 1869, Tompkins conveyed lot 8 and other property to Joseph G. Gibbons. By warranty deed of September 20, 1870, Gibbons conveyed lot 8 and other property to James H. Rees. By deed dated September 23, 1870, Rees conveyed to the South Park commissioners the north one hundred and thirty-four feet of twenty-one lots, including lot 8, for the consideration, as recited, of $31,500. By quitclaim deed of date November 18, 1876, Rees conveyed to Josiah C. Goodhue an undivided half of lot 8 and other property, and this interest conveyed to Goodhue, by subsequent *mesne* conveyances, was transferred to Albert Wisner. Wisner also claims title under a tax deed to the east half of lot 8, except parkway, under sales for taxes made in 1879.

The north one hundred and thirty-four feet of lot 8 is included within the limits described in the South Park acts as territory to be taken for park purposes, and in 1871, and since then, the park commissioners graded it for boulevard purposes, grubbed out the trees and stumps, and spread manure on it, but there has never been any travel on it. From about 1870 to 1880 the park commissioners used the south half of lot 8 for a pound, and had it fenced in, and after February 18, 1880, held it as tenant of Wisner. From 1873 to 1881 the east half of lot 8 was described in the assessment books as "except parkway." It was shown that the entire

Yerby tract was not worth more than $100 to $150 an acre, any time from 1862 to 1868 or 1869, when its value rose very rapidly on account of the location of the park.

The decree of the circuit court was in accordance with the prayer of the petition, establishing the title to the east half of said lot 8 in the defendant in error.

Mr. JESSE B. BARTON, for the plaintiffs in error:

Joseph W. Wiltberger made a conveyance to Embree, wherein he attempted to convey a quarter interest owned by three minors, the youngest of whom would not attain his majority until October 30, 1866. The consideration recited was $94,-550, but really was $51,250, which is arrived at as follows: The mortgage recites an indebtedness of $91,200, part purchase money, leaving a balance paid of $3250, but the actual debt secured by the mortgage was $48,000. Embree gave Wiltberger back a mortgage securing the payment of the principal note of $48,000, which was to become due January 1, 1868, but only on a condition that the titles of the minor heirs should then have inured to his or his grantee's benefit. This note, then, could not become due by any kind of default, until after October 30, 1866, and Wiltberger had no right to declare it due in 1862, and sell the property to pay the whole debt.

Under two well known principles of law, Wiltberger's sale under that mortgage was void: First, when a mortgagee is the grantor of the mortgagor by previous conveyance with covenants of warranty, he can not foreclose the mortgage for condition broken; if there then exists a breach of covenant of his warranty. *Coffman* v. *Scoville*, 86 Ill. 300; *Smith* v. *Newton*, 38 id. 230; Jones on Mortgages, secs. 1508-1178. And second, a mortgage sale, if for more than is due, is void. *Jones* v. *Rumsey*, 3 Bradw. 303; *Hards* v. *Burton*, 79 Ill. 504; *Rains* v. *Mann*, 68 id. 264; *Smith* v. *Smith*, 32 id. 198; *Gibbons* v. *Hoag*, 95 id. 45.

When, too, the principal of a mortgage debt can not be declared due for non-payment of interest, there can be no foreclosure for such non-payment. Jones on Mortgages, sec. 1178, and cases cited.

Messrs. G. & W. GARNETT, for the defendant in error:

This court has sustained the validity of the sale and deed by Wiltberger under the Embree mortgage. *Gibbons* v. *Hoag,* 95 Ill. 45.

The mortgage describes all the notes alike, and says nothing about the $2400 notes being intended for interest, and the deed from Wiltberger to Embree shows a consideration of $94,550. Embree, and those claiming under him, can not complain if purchasers under the mortgage relied upon the recitals in the deed and mortgage.

The tax deed is void, for the reason no proper notice of the date of the purchase, and when the time of redemption expired, was served on the parties in possession. It states that the tax sale was on September 18, 1879, and that the redemption would expire October 18, 1881.

The affidavit of Stanley is wholly insufficient to authorize a deed. It fails to show what the notice served stated as to when the time for redemption would expire, but simply says that the notice stated when the time of redemption would expire. The law does not allow a party to give his opinion on any legal question, but requires him to state particularly the facts relied on.

The affidavit of French is equally defective in failing to show that the persons served with notice were the only persons in possession at the date of the service. It states he delivered the notice to the South Park commissioners. The corporation, as an abstract being, could not have a copy of a notice delivered to it. It is probable he meant a delivery to the persons composing the board. If so, he should have stated their names, so that it might be known whether they

were such officers or not.    The affidavit should have stated particularly the facts relied on as showing a service, and not the party's conclusions.

Mr. Justice Sheldon delivered the opinion of the Court:

The opening paragraph of the brief of counsel for plaintiffs in error is as follows: "As no questions were raised on the trial but such as called for a decision on the sufficiency of the foreclosure of the Embree mortgage, and of the tax title, it will not be necessary to discuss any other, excepting, perhaps, *laches* and possessory titles." The inquiry before us, then, is quite limited, and hardly even reaches to the extent of the sufficiency of the foreclosure of the Embree mortgage, as that matter was before us on a former occasion, in the case of *Gibbons* v. *Hoag*, 95 Ill. 45, where we passed upon the question of the validity of the sale and deed made by Joseph W. Wiltberger to Egbert W. Wiltberger under the power of sale in the mortgage from Jesse Embree, and of the deed from Egbert W. to Joseph W., and decided that they were valid, and made the better title as between a subsequent purchaser from Joseph W. Wiltberger, in 1863, and one under Embree, in 1869. That was a like proceeding as the present, under the Burnt Records act, for the establishment of title in the petitioner there, who claimed under Wiltberger. We are entirely satisfied with the conclusion reached in that case, and think it must be held decisive upon this point, unless there are different facts shown in this record which should vary the decision. We do not understand counsel as claiming otherwise, but it is insisted there are additional facts presented in this case, which should cause a different determination. Such additional facts are, a stipulation in this case that the $2400 notes, secured by the Embree mortgage, were given for the interest upon the principal sum of $48,000, which was represented by the $48,000 note secured by said

Embree mortgage. It is said it was assumed in the former case that the eighteen $2400 notes were principal notes, and that the foreclosure was only for those of the $2400 notes then due, whereas it was for the $48,000 note as well; that as it now appears the smaller notes were for interest only, no interest could be declared due, unless it was then earned; that the $48,000 note could not be made due until the title of the minors to one-fourth of the land had been secured to Embree; and that so a want of power, under the mortgage, to make the sale that was made, is apparent.

The mortgage describes all the notes alike, saying nothing of the $2400 notes being for interest. The deed from Wiltberger to Embree showed a consideration of $94,550. It would seem that third parties purchasing under the Wiltberger title, might well rely upon the representations made in these instruments, as against Embree and those claiming under him, and have the right to regard the $2400 notes as principal notes. However it might be with strictly interest notes, that no interest could be declared due unless it was then earned, we do not regard these smaller notes as being for interest, properly, but as really installments of purchase money for property bought on a credit. The property, as would appear from all the facts in evidence, was bought November 18, 1858, on a credit of $48,000, payable January 1, 1868, and two payments, of $2400 each, on January 1 of each intervening year. The smaller notes represented the difference between a cash sale for $48,000 and a credit sale on the time given, calculating the difference on the basis of ten per cent interest on the $48,000, and calling the latter principal, and the smaller notes interest, did not alter the essential character of the transaction. All the notes represented purchase money for land sold on a credit, and on default in payment, for the time specified, of any of the smaller notes, we think, under the mortgage, all the smaller notes might be declared to be due.

The lot in question is situated in the north half of the north half of the north-west quarter of section 15, and at the mortgagee's sale that forty acres was first sold for $16,000. There were eighteen of the $2400 notes, and if there was right, as we find, to declare them all due, their aggregate amount was sufficient to authorize the sale, not only of the forty, but of the whole one hundred and twenty acres. There was no necessity, then, to declare the $48,000 note due, or that it should be due, to warrant the sale. Reference is made to Jones on Mortgages, section 1178, in support of the proposition that when the principal of a mortgage debt can not be declared due for non-payment of interest, there can be no foreclosure for such non-payment. That rule surely can not apply in such a case as this, where the so-called principal note is given, with other notes, in consideration of land conveyed, and may not be declared due because of its being made a condition of its payment that an outstanding title to one-fourth of the land shall first be gotten in for the benefit of the mortgagor, a title to the other three-fourths being conveyed, and the other notes not being subject to such condition, but payable absolutely, and there being an express covenant of the mortgagor that the other notes may all be declared due upon default of payment of any one of them for a certain time after becoming due.

It is insisted, that the possession of the north one hundred and thirty-four feet of the property in question, by the South Park commissioners, from 1870 to 1882, under the deed thereof from Rees, makes good title in the park commissioners, under the seven years' limitation law. It is seven years' possession under color of title, accompanied with the payment of taxes, which bars title under the Limitation act. There was here no payment of taxes on the land during the seven years. But being park property, and as such exempt from taxation, it is claimed that such exemption is equivalent to payment of taxes. We do not so think. If the land was

37—117 ILL.

exempt from taxation, and so there were no taxes to pay, then this Limitation act could not be made to apply here. Seven years' possession, under color of title, without payment of taxes, will not bring a case within the act.

Wisner's tax title claim was under a quitclaim deed from P. E. Stanley, the holder of a tax deed, made to him as assignee of two tax sale certificates, under two tax sales, one for the seventh installment of the South Park assessment, made September 3, 1879, of the east half of lot 8, for $25.49, to the South Park commissioners, and the other for the State and county taxes of 1878, of "ex. parkway, E. ½ lot 8," for $25.16, September 8, 1879, to D. G. Hamilton. It is sufficient for the defeat of the claim of title under the last named sale for State and county taxes, that the notice of the sale required to be served upon the persons in possession of the property sold, did not truly state when the time of redemption would expire. The time of redemption would expire September 8, 1881,—the notice stated that it would expire on October 18, 1881. It was held in *Wilson* v. *McKenna*, 52 Ill. 43, and *Gage* v. *Bailey*, 100 id. 530, that the misstatement in the notice of the expiration of the time of redemption, would render invalid the tax deed. Section 216 of the Revenue law makes it a condition that before the purchaser at a tax sale shall receive a deed, he shall serve, or cause to be served, a written notice on every person in possession of the land or lots sold, three months before the expiration of the time of redemption, in which notice he shall state, among other things, when he purchased the land or lot, and when the time of redemption will expire; and there is the further provision, that the purchaser must, before he shall be entitled to a deed, make an affidavit of having complied with such condition, stating particularly the facts relied on as showing such compliance, the affidavit to be delivered to the person authorized by law to make the deed, to be filed and entered of record in the proper office. These requirements were held, in the case

first above cited, to be conditions precedent to the right to have a deed.

In answer to the cases cited, it is said that in both the cases the date given as the expiration of the time for redemption was earlier than that allowed by the statute, and it is supposed that must have been the reason for the holding, but that in the present case the date named as the expiration of the time of redemption was later than that fixed by the statute, giving the owner the full statutory time and over a month more, for redemption, so that no one was injured or misled. It is insisted that this distinction between the cases calls for a contrary decision here. We do not regard it as matter for inquiry whether or not there has been the misleading or injury of any one from wrongly stating in the notice when the time of redemption will expire. The title to be made under a tax deed is one *stricti juris,* and we need look no further, where there has been non-compliance with what the law makes a condition precedent to the right to have a tax deed. We find there was such a non-compliance here, in not stating in the notice the right time of the expiration of the right of redemption, and that that of itself avoids the tax deed. We attach no importance to the distinction in the wrong date of the expiration of the time of redemption, as being earlier or later than that allowed by the statute.

As to the tax deed under the sale for the seventh installment of the South Park assessment, we deem it a sufficient objection to the validity of that deed that the affidavit of service of notice of the purchase for taxes, etc., fails of showing compliance with the prerequisite condition of service of the notice upon the person or persons in the actual possession or occupancy of the lot at the time of such service. The affidavit in this respect is, that the lot described in the notice was, on the 19th day of April, 1881, in the actual possession of the South Park commissioners, and that a copy of the notice was delivered to the South Park commissioners May

20, 1881. The affidavit does not state who was in possession on the last named day. Since the 19th of April preceding, the possession may have changed, and the affidavit should have shown service of the notice upon the person or persons in actual possession at the time the notice was served. It is not sufficient, as is urged, that other evidence in the case shows the park commissioners were in possession at that time. The statute is express, that the purchaser, or his assignee, by himself or agent, shall make an affidavit of having complied with the provisions of the section, stating particularly the facts relied on as showing such compliance, before he shall. be entitled to a deed. Such affidavit was not made, and the purchaser had no right to a deed. We can not go so far to sustain a tax title as to dispense with a condition precedent to it.

We find no foundation in the facts of the case for any imputation of *laches* to the defendant in error which should affect her title to relief. The decree of the circuit court should be affirmed.

*Decree affirmed.*

Mr. JUSTICE SCOTT: I do not concur in this opinion.