## GAGE v. BANI.

APPEAL FROM THE CIRCUIT COURT · OF · THE UNITED STATES FOR
THE NORTHERN DISTRICT OF ILLINOIS.

No. 20.   Submitted January 29, 1891. — Decided October 26, 1891.

Where a tax deed in Illinois is relied on as evidence of paramount title, it
is indispensable that it be supported by a valid judgment for the taxes,
and a proper precept authorizing the sale.

It is well settled in that State that a tax title is purely technical, and de-
pends upon a strict compliance with the statute; and that the giving of
the particular notice required by the statute is an indispensable condi-
tion precedent to the right to make a deed to the purchaser or his as-
signee.

The owner of land in Illinois, sold for the non-payment of taxes, or of
special assessments, is entitled to be informed in the statutory notice
whether the sale was for the non-payment of a tax, or of such an assess-
ment; and a notice which informs him that the sale was made "for
taxes and special assessments, authorized by the laws of the State of
Illinois" is a defective notice.

The right of an occupant of land in Illinois, sold for the non-payment of
taxes or special assessments, to personal notice of the fact of sale, before
the time of redemption expires, is expressly given by the Constitution
of Illinois, and is fundamental: and upon a direct issue whether such
notice was given, the owner testifying that he did not receive notice,
the evidence should be clear and convincing that it was given as required
by law, before the tax title can be held to be paramount.

THE court stated the case as follows:

The appellee Bani, claiming to be the owner in fee, and
being in the actual possession, of lots 12 and 13 in block 2
of Lewis Heintz's subdivision of twenty-four acres in the town
of Lake, Cook County, Illinois, brought this suit, Decem-
ber 6, 1883, for a decree setting aside and declaring void
three several tax deeds, covering those lots, and which were
held by the defendant Asahel Gage.

It was alleged in the bill that the plaintiff derived title by
warranty deed from Peter Caldwell and wife, of date May 15,
1882, the consideration being $3000; that his purchase was
without notice of any adverse claim or title; that from the

27th day of April, 1868; until such purchase, Caldwell was the owner in fee of the premises, with a complete title deducible of record, and in actual and continued possession, under claim and color of title, paying taxes thereon for a period of more than seven years; and that prior to his purchase, to wit, on the 27th of March, 1880, the plaintiff took possession, as Caldwell's tenant, and in that capacity occupied the premises up to the date of the deed to him, thereafter holding and occupying them as owner, under claim and color of title, paying all taxes and assessments legally made thereon.

The tax deeds held by Gage, against which the bill was particularly aimed, were dated, respectively, July 3, 1880, June 30, 1880 and July 6, 1880. The one of July 3, 1880, was based upon a judgment of the county court, at its July term, 1877, for the amount of the third instalment of a special assessment, warrant 36, assessed by authority of the town of Lake, which, with interest and costs, amounted to $6.98; the one of June 30, 1880, upon a judgment for the fifth instalment of South Park assessment for the year 1876, amounting, with interest and costs, to $3.38; and the one of July 6, 1880, upon a judgment for State, county and city taxes for 1876, amounting, with interest and costs, to $16.88.

The bill also alleged that the plaintiff having learned for the first time in March, 1883, of these tax deeds, immediately offered to pay any sum reasonably necessary to cover all expended by Gage for taxes, costs and disbursements, together with interest and penalties, if a quit-claim deed was made to him; and that Gage refused such offer, pretending that the lots belonged to him.

The plaintiff, after setting out numerous grounds upon which he assailed the validity of these tax sales and deeds, and renewing his offer to reimburse the defendant for all sums paid on account of taxes and assessments upon the property, with damages and penalties, prayed that the tax deeds, which were fair upon their face, be declared void, and decreed to be surrendered for cancellation.

The defendant pleaded in bar of the suit that on the 24th of July, 1876, the county clerk of Cook County, under the pro-

visions of chapter 120 of the Revised Statutes of Illinois, executed and delivered a tax deed conveying to him, his heirs and assigns forever, the title to the lots in the bill mentioned; and that afterwards, on the 3d day of August, 1876, that deed was filed for record and recorded in the proper office.

This plea was held to be insufficient; and the defendant, with leave of the court, filed an answer relying, in support of his claim to the lots, on the tax deed of July 24, 1876, as well as upon "divers other good and sufficient tax deeds, all of which are duly recorded in the recorder's office of Cook County aforesaid, and are matters of public record, each of which is based upon a valid judgment and precept." The answer made no express reference to the deeds of July 3, June 30, and July 6, 1880.

The plaintiff having paid into court the sum of $150 for the defendant on account of tax sales, costs and disbursements, taxes and interest, it was adjudged that he was the owner in fee of the lots in question, and that the tax sales and deeds, under which the defendant claimed title, were void.

By the statutes of Illinois, in force when the sales were made, upon which the tax deeds in question were based (Rev. Stats. 1889, title Revenue, pp. 1145, 1146) it was among other things, provided:

"SEC. 216. Hereafter no purchaser or assignee of such purchaser of any land, town or city lot, at any sale of lands or lots, for taxes or special assessments due either to the State or any county or incorporated town or city within the same, or at any sale for taxes or levies authorized by the laws of this State, shall be entitled to a deed for the lands or lots so purchased, until the following conditions have been complied with, to wit: Such purchaser or assignee shall serve, or cause to be served, a written or printed, or partly written and partly printed, notice of such purchase on every person in actual possession or occupancy of such land or lot, and also the person in whose name the same was taxed or specially assessed, if upon diligent inquiry he or she can be found in the county; also the owners of or parties interested in said land or lot, if they can, upon diligent inquiry, be found in the county, at least three months

before the expiration of the time of redemption on such sale; in which notice he shall state when he purchased the land or lot, in whose name taxed, the description of the land or lot he has purchased, for what year taxed or specially assessed, and when the time of redemption will expire. If no person is in actual possession or occupancy of such land or lot, and the person in whose name the same was taxed or specially assessed, upon diligent inquiry, cannot be found in the county, then such person or his assignee shall publish such notice in some newspaper printed in such county, and if no newspaper is printed in the county, then in the newspaper that is published in this State nearest to the county seat of the county in which such land or lot is situated; which notice shall be inserted three times, the first time not more than five months, and the last time not less than three months before the time of redemption shall expire.

" SEC. 217. Every such purchaser or assignee, by himself or agent, shall, before he shall be entitled to a deed, make an affidavit of his having complied with the conditions of the foregoing section, stating particularly the facts relied on as such compliance — which affidavit shall be delivered to the person authorized by law to execute such tax deed, and which shall by him be filed with the officer having custody of the record of the lands and lots sold for taxes and entries of redemption in the county where such lands or lots shall lie, to be by such officer entered upon the records of his office, and carefully preserved among the files of his office, and which record or affidavit shall be *prima facie* evidence that such notice has been given. Any person swearing falsely in such affidavit shall be deemed guilty of perjury, and punished accordingly."

" SEC. 219. At any time after the expiration of two years from date of sale of any real estate for taxes or special assessments, if the same shall not have been redeemed, the county clerk, on request, and on the production of the certificate of purchase, and upon compliance with the three preceding sections, shall execute and deliver to the purchaser, his heirs or assigns, a deed of conveyance for the real estate described in such certificate."

" Sec. 225. Unless the holder of the certificate for real estate purchased at any tax sale under this act takes out the deed, as entitled by law, and files the same for record, within one year from and after the time for redemption expires, the said certificate or deed, and the sale on which it is based, shall, from and after the expiration of such one year, be absolutely null. If the holder of such certificate shall be prevented from obtaining such deed by injunction or order of any court, or by the refusal of the clerk to execute the same, the time he is so prevented shall be excluded from the computation of such time. Certificates of purchase and deeds executed by the county clerk shall recite the qualifications required in this section."

These regulations were established in obedience to the 5th section of article 9 of the constitution of Illinois of 1870, providing : " The right of redemption from all sales of real estate for the non-payment of taxes or special assessments of any character whatever, shall exist in favor of owners and persons interested in such real estate, for a period of not less than two years from such sales thereof. And the General Assembly shall provide by law for reasonable notice to be given to the owners and parties interested, by publication or otherwise, of the fact of the sale of the property for such taxes or assessments, and when the time of redemption shall expire : *Provided*, That occupants shall in all cases be served with personal notice before the time of redemption expires."

*Mr. Augustus N. Gage* for appellant.

*Mr. Levi Sprague* for appellee.

Mr. Justice Harlan, after stating the facts as above reported, delivered the opinion of the court.

It is not necessary to consider whether the defendant's plea was or was not sufficient ; for the facts alleged in it, namely, the execution by the county clerk to Gage of the tax deed of July 24, 1876, and the recording of that deed, are restated and relied on in the answer ; and no objection was made in

the court below to the answer upon the ground that it set up the same matter presented by the plea.   Story's Eq. Pl. § 688.

In respect to that tax deed, it appears that the sale upon which it was based was made August 29, 1873. Did Gage serve or cause to be served upon Caldwell notice of that sale as required by the statute? The notice, presented to the county clerk at the time of the application for a deed, and which Gage claimed was served August 14, 1874, upon Caldwell, personally, was as follows: "To whom it may concern. This is to notify you that on the 29th day of August, 1873, Henry H. Gage purchased, and afterwards assigned the certificate of purchase to the undersigned, at a sale of lots and lands for taxes and special assessments authorized by the laws of the State of Illinois, the following-described real estate, taxed in the name of Peter Caldwell, to wit [Here follows a description of various lots, including those here in dispute] — said taxes and special assessments were levied for the year 1872 — and that the time of redemption thereof from said sale will expire on the 29th day of August, 1875. ASAHEL GAGE."

It is plain, upon the face of the statute, that a purchaser at a sale for taxes or special assessment is n t entitled to a deed until the conditions prescribed by section 216 are met; one of those conditions being that the notice required to be served by the purchaser or his assignee on every person in actual possession or occupancy of the land or lot sold, and upon the person in whose name the same was taxed or specially assessed, if upon diligent inquiry he can be found in the county, "shall state when he purchased the land or lot, in whose name taxed, the description of the land or lot he has purchased, for what year taxed or specially assessed and when the time of redemption will expire." The notice that Gage claimed was served on Caldwell is radically defective in that it did not show whether the sale was for taxes or special assessments. It stated that the sale of 1873 was "for taxes *and* special assessments." This precise question has been determined by the Supreme Court of Illinois. In *Gage* v. *Waterman*, 121 Illinois, 115, 118, the court said: "It might be of consequence to the land owner to know whether his property was sold for a tax

or special assessment. This notice did not afford that information." In *Stillwell* v. *Brammell*, 124 Illinois, 338, 345, the notice was of a "sale of lands, town and city lots, made pursuant to law . . . for the delinquent taxes *and* special assessments levied for the year 1880." The court held this notice to be materially defective, saying: "There is a difference between a tax and a special assessment. The notice above quoted fails to inform the land owner whether his property was sold for a tax or a special assessment. It was, therefore, defective under the ruling made in *Gage* v. *Waterman*, 121 Illinois, 115. The title to be made under a tax deed is one *stricti juris*."

So in *Gage* v. *Davis*, 129 Illinois, 236, 239, where one of the questions was as to the validity of a notice given by the assignee of a purchaser "at a sale of lots and lands for taxes and special assessments, authorized by the laws of the State of Illinois . . . said taxes and assessments were levied for the year 1872," etc., the court said: "The notice above quoted fails to state whether the lots were taxed or specially assessed. It does not inform the owner whether his lots were sold for a tax or special assessment. It merely tells him that his lots were sold at a general sale of lots and lands for taxes and special assessments levied for the year 1872. The words, 'said taxes and assessments were levied for the year 1872,' refer back to and define the sale at which the lots in question were sold, but such words cannot be construed to mean that the lots were sold on September 13, 1872, for both taxes and special assessments."

This view is not at all affected by section 224 of the above statute, declaring that deeds executed by the county clerk shall be *prima facie* evidence in all controversies and suits in relation to the right of the purchaser, his heirs or assigns, of the following facts: That the real estate conveyed was subject to taxation at the time it was assessed, and had been listed and assessed at the time and in the manner required by law; that the taxes or special assessments were not paid before the sale; that the estate conveyed had not been redeemed at the date of the deed, was advertised for sale in the manner and

for the length of time required, and sold for taxes or special assessments, as stated in the deed; that the grantee was the purchaser or assignee of the purchaser; and that the sale was conducted in the manner required by law. It has been uniformly held, notwithstanding this section, that where a tax deed is relied on as evidence of paramount title, it is indispensable that it be supported by a valid judgment for the taxes and a proper precept authorizing the sale. *Holbrook* v. *Dickinson*, 46 Illinois, 285; *Gage* v. *Lightburn*, 93 Illinois, 248, 252; *Pardridge* v. *Village of Hyde Park*, 131 Illinois, 537, 541. So it must appear that the purchaser at the tax sale or his assignee made the affidavit required by section 217 as to the service of notice of the tax sale. *Smith* v. *Hutchinson*, 108 Illinois, 662, 667; *Gage* v. *Caraher*, 125 Illinois, 447, 454. And when the notice is produced, the question is necessarily open as to whether it was such as section 216 prescribed, before the purchaser is entitled to a deed from the county clerk. The settled doctrine of the Supreme Court of Illinois is that a tax title is purely technical, and depends upon a strict compliance with the statute. *Altes* v. *Hinckler*, 36 Illinois, 265, 267; *Marsh* v. *Chesnut*, 14 Illinois, 223; *Charles* v. *Waugh*, 35 Illinois, 315, 323; *Wisner* v. *Chamberlin*, 117 Illinois, 568, 580; *Chappell* v. *Spire*, 106 Illinois, 472, 475; *Stillwell* v. *Brammell*, 124 Illinois, 338, 345. It is as firmly settled that the giving of the particular notice required is an indispensable condition precedent to the right to make a deed to the purchaser or assignee. *Gage* v. *Bailey*, 100 Illinois, 530, 536; *Gage* v. *Schmidt*, 104 Illinois, 106, 109; *Gage* v. *Herrey*, 111 Illinois, 305, 308; *Gage* v. *Mayer*, 117 Illinois, 632, 636.

As the notice of the sale of 1873 was not in conformity with the statute, Gage was not entitled to the deed of July 24, 1876, and it is void.

The first of the deeds held by Gage which is referred to in the bill is that of July 3, 1880. One of the contentions of the plaintiff is that, even if there were a valid judgment and precept for the sale, that deed was issued without authority of law. The county clerk issued it upon the showing made by the following papers: 1. A notice of the tax sale, dated Chicago, April

21, 22 and 23, 1879, given by Asahel Gage, addressed "To the owners or parties interested in the following described lands and lots, and to the persons in whose names they were taxed or specially assessed, and to whom it may concern," and published in the Chicago Daily Evening Journal on those days. That document gave notice of the purchase by Asahel Gage of the lots here in dispute, on the 8th day of August, 1877, at a sale "for taxes *and* special assessments authorized by and levied *or* assessed in compliance with the laws of the State of Illinois," and "taxed *or* specially assessed for the year 1874 for the third instalment of special assessment number 36 of the town of Lake, and the time of redemption of said land or lots from said sale will expire on the 8th day of August, 1879." The fact of the publication of that notice is supported by the affidavit of the publisher of the paper referred to. 2. An affidavit of the agent and attorney of the purchaser, in which, after setting out the above notice and its publication in the newspaper, he states that "Asahel Gage served or caused to be served written or printed or partly written and partly printed notices of purchase at said tax sale, as in other affidavits hereto attached more fully set forth, on every person in actual possession or occupancy of such land or lots, and also the person in whose name the same were taxed or specially assessed, if upon diligent inquiry they could be found in said county, and a reasonable notice was given to the owners or parties interested in said land or lots at least three months before the expiration of the time of redemption on such sale, and that said notices stated when he purchased the land or lots, in whose names taxed, the description of the land or lots he has purchased, for what year taxed or specially assessed, and when the time of redemption will expire. And this affiant says that he has compared the affidavits hereto attached *with the original memoranda of service of the respective parties making the same,* and that the same are correct *according to the original memoranda of service as aforesaid.*" This affidavit states, generally, that Asahel Gage caused a reasonable notice to be given to the owners or parties interested, by publication *or* otherwise, of the fact of the sale of the property described in the notice

attached for the taxes or assessments therein described, and when the time of redemption would expire, and complied with all the provisions of the constitution and laws of the State of Illinois to entitle him to a deed or deeds of conveyance. 3. Affidavit of Charles P. Westerfield, made July 15th, 1879, in which he describes himself, as agent of Asahel Gage, and states that on the 5th day of December, 1878, he served upon Peter Caldwell and Ann Caldwell, his wife, "by handing the same to and leaving the same *with the said Ann Caldwell personally*," a copy of the notice annexed to his affidavit; that "the persons so served were the only persons in actual possession or occupancy of said land or lots [the premises in dispute] at least three months before the expiration of the time of redemption;" and that said lands or lots were taxed *or* specially assessed in the name of "P. Caldwell and Peter Caldwell." 4. Affidavit of one Bunker, made July 15th, 1879, describing himself and stating that he, as agent of Gage, "on the dates mentioned in the foregoing affidavit, accompanied, was present with and witnessed Charles P. Westerfield, on the dates and at the several places as mentioned in the foregoing affidavit, serve the notices above mentioned on the persons mentioned in the above affidavit," and that "a copy of the annexed notice was served upon the said persons at the times, places and in the manner and form as stated above." 5. Affidavit of Charles P. Westerfield, made July 15, 1879, describing himself as agent of Asahel Gage, and stating that, as such agent, he served, April 4, 1879, upon Peter Caldwell, personally, a copy of the notice which was annexed. 6. Affidavit of U. George Taylor, in the precise words of Bunker's affidavit, except that Taylor states the service which he, as agent of Gage, witnessed, occurred on the 4th of April, 1879. 7. One of the notices, annexed to the above affidavits, was addressed: "To whom it may concern," stated the purchase by Gage, on the 8th day of August, 1877, "at a sale of lots and lands for taxes *and* special assessments authorized by the laws of the State of Illinois, taxed in the name of P. Caldwell," of the lots in controversy "taxed *or* specially assessed for the year 1874 for the third instalment of special assessment number 36

of the town of Lake, and that the time of redemption thereof from said sale will expire on the 8th day of August, 1879." The other notice differed from the first one only in stating that the lots and lands sold were taxed in the names of P. Caldwell and Peter Caldwell. · 8. Certificates of sale of the two lots in dispute to Asahel Gage.

In considering whether the purchaser was entitled, upon the showing made by him, to the deed of July 3, 1880, we give no weight to the notice published in the newspaper. · The right of the purchaser or his assignee to give notice, in that mode, of the tax sale, existed only when no person was in actual possession or occupancy of the property sold, and the person in whose name it was taxed or specially assessed could not, upon diligent inquiry, be found in the county — a condition of things which is not pretended to have existed after 1868 up to the execution of the deeds in question. Nor do we attach any value to the affidavit of Westerfield, made July 15, 1879, as to the service on the 5th of December, 1878, because that service was upon Peter Caldwell, by handing the notice to his wife; and that is not stated to have been done in the presence of the husband. The statute provides for service upon every person in actual possession or occupancy of the land, and also upon the persons in whose name it is taxed. If it be proper or necessary, under any circumstances, to serve notice of the sale upon the wife where the husband owns and occupies the land, and it is taxed in his name, no such circumstances are disclosed in the present case.

As to the notice which Westerfield claimed to have served on Caldwell, April 4, 1879, it is doubtful, under the decisions above cited, whether the obscurity arising from the words, in each notice, "taxes *and* special assessments" and "taxed *or* specially assessed," is removed by the use of the words "for the third instalment of special assessment number 36 of the town of Lake." But waiving that question, we are not prepared to hold that the decree is erroneous so far as it sustains the plaintiff's contention that there was in fact no service on Caldwell of notice of the tax sale and of Gage's purchase. Caldwell testifies that he was not at any time, to his knowl-

edge, served with notice of the tax sales of these particular lots. The witness relied on to prove the contrary is Westerfield. He states in his deposition, taken November 29, 1884, but not in the presence of the plaintiff or of his attorney, and, so far as the record shows, without notice to either, that on the 4th day of April, 1879 — more than five years before he gave the deposition — he served a notice of the tax sale of this property personally on Peter Caldwell and wife. It is difficult to believe that he could have remembered, at the time he testified in November, 1884, the particular day in the spring of 1879 when he served such a notice, unless his memory was refreshed by some memorandum made at the time by him or in his presence. But he does not state that he made, or that he ever saw, any such memorandum. The deposition of Caldwell was given before that of Westerfield, and it behooved the defendant to show, if he could do so, that when Westerfield gave the 4th of April, 1879, as the date of the service of the notice on Caldwell he was not guessing or giving merely his impressions. But Westerfield was not asked whether he ever made, or saw, any memorandum of the date of service, nor did he state how he was able, apparently without hesitation or doubt, to fix the exact day of such service nearly six years before giving his deposition. It may be that Westerfield based his statement upon the affidavit made by him on the 15th day of July, 1879. But that affidavit was not made contemporaneously with the alleged service, and is one showing service only on Peter Caldwell; whereas in his deposition he testified that the service on the 4th of April, 1879, was on both Caldwell and wife.

In this connection there are some circumstances that are not without interest. Taylor made an affidavit in support of Gage's application for the deed, stating that he, also, was an agent of Gage, was present "on the date and at the place as mentioned" in Westerfield's affidavit, and witnessed the service of the notice upon Caldwell "in the manner and form" as stated by Westerfield. A witness so clear in his recollection, being one of the numerous agents whom Gage seemed to have had in this business, ought to have been required to give

his deposition, or some reason should have been given why he was not produced as a witness. Of course, the defendant knew that *ex parte* affidavits, filed to procure a deed, would not be conclusive evidence in a suit between the owner of the land and the holder of the tax title in respect to the notice of the tax sale.

There is another circumstance not without weight. The agent and attorney of Gage, in his affidavit in support of the application for a deed, stated that there were then in existence "the original memoranda of service of the respective parties making the same," and that the affidavits of Westerfield, Bunker and Taylor were correct according to such memoranda. He based that statement upon a comparison by himself of the affidavits with the memoranda. But he does not testify in the case as a witness, although he knew that Caldwell, under oath, had denied service of notice as to the sale of the particular lots here in dispute. And no such original memoranda appear upon the notice returned. If such memoranda were made by Westerfield, or in his presence contemporaneously with the service of the notice, and the court was informed by the record that the statements in his deposition were made, after his recollection had been refreshed by examining them, there would be ground to contend that Caldwell's statement was incorrect.

There is still another difficulty in the way of the defendant. Caldwell having testified that he did not receive any notice of the tax sale, and Westerfield being afterwards called as a witness to show notice, there was no distinct reference by the latter to the notice filed by Gage with the county clerk. Being asked whether "in the spring, on or about the 4th of April, 1879," he "served a notice of the tax sales of this property upon Peter Caldwell," he replied: "On the 4th day of April I served *a* notice personally on Peter Caldwell and wife." Now what notice was this? The statute required that the notice should state certain facts, and that the affidavit should state "particularly the facts relied on" as showing compliance with the statute. Did the notice to which Westerfield refers in his deposition meet these requirements? He

does not so state. Was that notice the same as the one referred to in his affidavit of July 15, 1879? We cannot tell from the record. In determining the weight to be given to Westerfield's deposition, upon the issue as to whether notice was in fact given to Caldwell, that deposition is not to be supplemented by his *ex parte* affidavit used in supporting Gage's application for a deed, and to which in his deposition he makes no reference whatever. So that upon the issue as to notice of the tax sale there is no proof whatever in this case in conflict with the statement of Caldwell, except the *prima facie* evidence furnished by the *ex parte* affidavit of Westerfield made July 15, 1879.

Under all the circumstances disclosed by the record, we are not prepared to say that the court below erred if it proceeded upon the ground, as it may well have done, that the proof failed to show satisfactorily, or with sufficient certainty, such notice by the purchaser, or his assignee, as the statute required before he could receive a deed. The right of an occupant of land, sold for the non-payment of taxes or special assessments, to personal notice of the fact of sale before the time of redemption expires, is expressly given by the constitution of Illinois, and is fundamental. And upon a direct issue as to whether such notice was given — the owner testifying that he did not receive notice — the evidence should be clear and convincing that it was given, as required by law, before the tax title is held to be paramount.

The case as to the deeds of June 30, 1880, and July 6, 1880, is substantially the same as that made in relation to the deed of July 3, 1880. What has been said in reference to the last-named deed applies to the other two.

Other questions involving the validity of the tax title have been discussed in the briefs of counsel. But, in view of the conclusions reached, they need not be examined.

*Decree affirmed.*