*In re* APPLICATION OF THE COUNTY COLLECTOR, for Judgment and Order of Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes and/or Special Assessments for the Year 1991 and Prior Years (Midwest Real Estate Investment Company, Petitioner-Appellee, v. Timothy Lee Anderson, Respondent-Appellant).

First District (1st Division)   No. 1—96—3452

Opinion filed March 16, 1998.

Hamblet, Casey, Oremus & Vacin, of Chicago (Donald F. Spak, of counsel), for appellant.

Miller, Shakman, Hamilton, Kurtzon & Schlifke, of Chicago (Arthur W. Friedman, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

In the case before us, we must determine what constitutes strict compliance with the statutory notice requirements in connection with a tax sale. According to the Property Tax Code, such strict compliance is a condition precedent to the issuance of a tax deed. 35 ILCS 200/22—40 (West 1994); *In re Application of the County Collector of Cook County for Order of Judgment & Sale of Lands upon Which General Taxes for Five or More Years are Delinquent*, 173 Ill. App. 3d 814, 818, 527 N.E.2d 1038, 1041 (1988) (hereinafter *Petition of B&W Investments*). In essence, then, this court must divine how the legislature would answer the question, "How strict is strict?"

On March 24, 1993, petitioner, Midwest Real Estate Investment Company (Midwest), purchased at a tax sale property belonging to respondent, Timothy Lee Anderson (Anderson). The property, located at 936 North Lawndale in Chicago, sold for $468.50, where $214.52 represented the amount of unpaid tax while the remainder satisfied interest and certain statutory fees. On April 26, 1993, the county treasurer and county clerk issued a certificate of purchase to Midwest. This certificate of purchase listed its designation as "Certificate Number 91—0025017."

On May 5, 1995, Midwest filed its petition for tax deed with the clerk of the circuit court, attaching a copy of the certificate of purchase for the subject property. Midwest sent notice to Anderson through the various methods required by statute (35 ILCS 200/22—15 *et seq.* (West 1994)) advising him that the redemption period on the property would expire on October 2, 1995.

Anderson failed to redeem the property, and on November 27, 1995, unbeknownst to Anderson, the trial court entered an order directing issuance of a tax deed to Midwest. Three days later, Anderson moved for leave to appear in the tax deed proceedings and for leave to defend. After several other motions and hearings, the

trial court directed Anderson to file an amended motion to vacate the tax deed order. Respondent Anderson did so on March 6, 1996, arguing that the statutorily required notice forms misstated the certificate number of the purchase certificate; therefore, petitioner Midwest failed to meet the "strict compliance" requirement of section 22—40 of the Property Tax Code. 35 ILCS 200/22—40 (West 1994). This failure, according to Anderson, ultimately nullified the tax deed. On May 22, 1996, the trial court vacated the November 27, 1995, tax deed order, recalled the tax deed issued pursuant to that order and set the case for an evidentiary hearing.

Following a bench trial, the trial court granted the petition for tax deed for the property at issue. The trial court entered judgment for Midwest in an order dated September 11, 1996. That order reinstated the November 27, 1995, tax deed order—over Anderson's objections. Anderson next brought this appeal, again asserting that Midwest was not entitled to the tax deed because it failed to strictly comply with the statutory notice requirements.[1] We reverse and hold that, by failing to include the *complete* certificate number on the notice forms it sent to Anderson, Midwest did not fulfill its duty to strictly comply with the notice requirements of the Property Tax Code.

■ Section 22—10 of the Property Tax Code requires that parties interested in the premises that are the subject of a tax sale must be given notice both of the sale and of the period in which the property may be redeemed. 35 ILCS 200/22—10 (West 1994); *Petition of B&W Investments*, 173 Ill. App. 3d at 817-18, 527 N.E.2d at 1041. This provision implements the mandate, contained in the Illinois Constitution, that such interested parties receive "reasonable notice of the sale and the date of expiration of the period of redemption." Ill. Const. 1970, art. IX, § 8(e). Because determination of whether the notice supplied by Midwest satisfies section 22—10 is a question of law, we need not defer to the findings of the trial court. *In re Application of Cook County Collector*, 100 Ill. App. 3d 178, 179, 426 N.E.2d 947, 949 (1981) (hereinafter *Petition of Ohr*).

As Anderson correctly points out, section 22—10 specifies the precise form in which this notice shall be given to the parties interested in the premises. That provision states as follows:

---

[1]Anderson also challenges the trial court's authority to simply reinstate the November 27, 1995, order directing issuance of the tax deed. In essence, Anderson argues that Midwest was required to restart the tax deed process from the beginning. Given our interpretation of the statute's strict compliance requirement, we need not decide this issue.

"*A purchaser* or assignee *shall not be entitled to a tax deed* to the property sold *unless*, not less than 3 months nor more than 5 months prior to the expiration of the period of redemption, *he or she gives notice of the sale* and the date of expiration of the period of redemption to the owners, occupants and parties interested in the property *as provided below.*

*The Notice* to be given to the parties *shall be* in at least 10 point type in the following form *completely filled in*:

TAX DEED NO. ................... FILED ....................

### TAKE NOTICE

County of.......................................................
Date Premises Sold ..............................................
Certificate No. .................................................
Sold for General Taxes of (year)
Sold for Special Assessment of (Municipality) and special
assessment number ..............................................
Warrant No. .................... Inst. No. ....................

### THIS PROPERTY HAS BEEN SOLD
### FOR DELINQUENT TAXES

Property located at .............................................
Legal Description or Property Index No. ......................
................................................................
................................................................

This notice is to advise you that the above property has been sold for delinquent taxes and that the period of redemption from the sale will expire on ...........................................

The amount to redeem is subject to increase at 6 month intervals from the date of sale and may be further increased if the purchaser at the tax sale or his or her assignee pays any subsequently accruing taxes or special assessments to redeem the property from subsequent forfeitures or tax sales. Check with the county clerk as to the exact amount you owe before redeeming.

This notice is also to advise you that a petition has been filed for a tax deed which will transfer title and the right to possession of this property if redemption is not made on or before ...............

This matter is set for hearing in the Circuit Court of this county in ........., Illinois on .........

You may be present at this hearing but your right to redeem will already have expired at that time.

YOU ARE URGED TO REDEEM IMMEDIATELY
TO PREVENT LOSS OF PROPERTY
Redemption can be made at any time on or before . . . . . . . . by
applying to the County Clerk of . . . . . . . . . ., County, Illinois at the
County Court House in . . . . . . . . . ., Illinois.

For further information contact the County Clerk

. . . . . . . . . . . . . . . . . . . . . . . . . . .
Purchaser or Assignee."
(Emphasis added.) 35 ILCS 200/22—10 (West 1994).

The form of notice mandated by section 22—10 is virtually identical to that required by section 22—5 (35 ILCS 200/22—5 (West 1994)), which requires that notice be given to the owner or occupant of the property within five months of the tax sale of said property. Moreover, section 22—40 provides that "[t]he court shall insist on strict compliance with Section 22—10 through 22—25" before a tax deed may issue. 200 ILCS 220/22—40 (West 1994). This statutory language requiring strict compliance is in accord with earlier common law interpretations. *Gage v. Bani*, 141 U.S. 344, 351, 35 L. Ed. 776, 779, 12 S. Ct. 22, 25 (1891); see also *Wisner v. Chamberlin*, 117 Ill. 568, 579, 7 N.E. 68, 72 (1886) ("[t]he title to be made under a tax deed is one *stricti juris*"). In the present case, Anderson complains that the notice forms given to him by Midwest were fatally defective because they misstated the "Certificate No." as "25017," when the actual designation given to Midwest's certificate of purchase was "Certificate Number 91—0025017."

Reading the statute very literally, Anderson argues that by omitting the numbers "91-00" from the certificate numbers on the statutory notice forms Midwest failed to "completely fill[ ] in" the forms—as required by section 22—10. Anderson concludes that because Midwest failed to strictly comply with section 22—10, it necessarily violated section 22—40. In light of the foregoing, Anderson urges this court to find that the trial court erroneously ordered the issuance of a tax deed to Midwest, citing *Petition of Ohr*, 100 Ill. App. 3d at 180, 426 N.E.2d at 949 (where notices misstated the municipality in which property was located, notices failed to strictly comply with statute).

■ Midwest's response is twofold. Initially, it characterizes the numbers "91-00" as a mere prefix to the essential certificate number, "25017." Midwest argues that the sole purpose of displaying the certificate number on the notice forms is to enable the county clerk to identify a particular sale when an interested party enters the clerk's office seeking an estimate of the cost of redemption, and that the prefix is unnecessary for this purpose. Midwest alternately responds

that, even if omission of the "91-00" constituted an error, it was a typographical or scrivener's error, which does not operate to defeat the validity of the tax deed, also citing *Petition of Ohr*, 100 Ill. App. 3d at 180, 426 N.E.2d at 949 (distinguishing *Garrick v. Chamberlain*, 97 Ill. 620 (1880)). We address each of Midwest's contentions in turn.

Initially, we acknowledge that the record demonstrates that respondent Anderson was neither misled nor prejudiced by the omission of the "91-00" prefix. Anderson visited the county clerk's office, obtained an estimate of the cost to redeem his property, and ultimately secured a loan in the amount necessary to redeem. Apparently, the only reason Anderson failed to actually redeem was the failure of his lender to process his loan quickly enough. However, a petitioner for a tax deed must strictly comply with the statutory notice requirements without regard to whether any owner, occupant or other interested party was misled by the defective notice; essentially, courts assume prejudice to any respondent. *Petition of Ohr*, 100 Ill. App. 3d at 180, 426 N.E.2d at 949.

Midwest nevertheless contends not only that its omission of the "91-00" prefix did not mislead Anderson, but also that its omission could not have confused or prejudiced any prospective respondent. According to Midwest, the prefix in this case merely indicates that the tax sale occurred as a result of nonpayment of annual property taxes for the year 1991. Because the very next line of the statutory notice form declared that the premises were sold for nonpayment of 1991 taxes, Midwest argues that its failure to include the prefix was harmless. Yet the evidence adduced at trial shows that for different types of tax sales certificate numbers receive different prefixes. For example, the certificate number for property sold at a scavenger sale receives a prefix indicating the year in which the scavenger sale was held followed by the letter "S." Meanwhile, certificate numbers for property sold at tax forfeiture sales are given the prefix "F." Midwest discounts any possibility for confusion by pointing out that scavenger and forfeiture sales occur at different times of year from annual tax sales. Under Midwest's theory, the "Date Premises Sold" line on the statutory notice form eliminates any potential misunderstanding. Midwest further attempts to justify its omission of the prefix by noting that the prefix does not appear on any public record and, hence, may be deleted from the notice forms at the whim of the tax purchaser.

We remain unconvinced. One reason for the strict compliance requirement is that " 'persons of limited knowledge or education may readily overlook the payment of taxes or, in good faith, be unable to make payment. The resulting loss of the property might constitute a

financial disaster.'" *In re Application of the County Treasurer & ex officio County Collector of Cook County, Illinois, for Order of Judgment & Sale of Lands & Lots upon Which All or Part of the General Taxes for Five or More Years Are Delinquent Pursuant to Section 235A of the Revenue Act of 1939, as Amended,* 213 Ill. App. 3d 535, 541, 572 N.E.2d 1107, 1111·(1991) (hereinafter *Petition of the City of Chicago*), quoting *In re Application of Cook County Treasurer & ex officio County Collector,* 92 Ill. App. 3d 603, 607, 416 N.E.2d 25, 28 (1980) (hereinafter *Petition of Mergili*). In light of this underlying purpose of the strict compliance requirement, we think it inappropriate to allow tax purchasers the freedom to impose an extra burden of discovery upon those parties seeking to redeem premises sold at tax sales. We see no discernible inconvenience to tax purchasers in requiring them to fully disclose any certificate number prefix. Additional support for our position may be found in the very fact that the General Assembly actually prescribed the precise form and manner in which notice must be given. Sections 22—10 and 22—5 of the Property Tax Code lend credence to the idea that tax purchasers should not be allowed to disclose only that information they deem relevant. Given the potential for any omission to inject confusion (however slight) into the redemption process, we reject Midwest's argument that its omission of the "91-00" prefix was harmless. *Cf. Petition of Mergili,* 92 Ill. App. 3d 603, 416 N.E.2d 25 (omission of statutorily required information harmless where such information did not exist).

As its secondary argument, Midwest asserts that even if its omission of the "91-00" prefix constitutes an error, it was merely a typographical or scrivener's error. To judge the merits of this argument, we must consider this court's opinion in *Petition of Ohr,* 100 Ill. App. 3d 178, 426 N.E.2d 947. In that case, the court found noncompliance with the statutory notice requirements, where the take notice misstated that the subject property was in Hickory Hills; in actuality, the property was located in Bridgeview. 100 Ill. App. 3d at 180, 426 N.E.2d at 949. The court went on to distinguish an early case considered by our supreme court (*Garrick v. Chamberlain,* 97 Ill. at 638), where the high court found a notice valid even though it misdescribed the property as "lot 5, lot 23" rather than "lot 5, in Block 23." (Emphasis omitted.) *Petition of Ohr,* 100 Ill. App. 3d at 180, 426 N.E.2d at 950. The court in *Ohr* stated:

> "[W]e find that the mistake in *Garrick* was readily apparent on the face of the notice. When a typographical or a scrivener's error is readily apparent on the face of [the] notice, the error does not necessarily mean that the notice fails to comply with the statutory notice requirements." 100 Ill. App. 3d at 180, 426 N.E.2d at 950.

We find two flaws in Midwest's fallback argument. First, the record indicates that the omission of the prefix to the certificate number was not a mistake on Midwest's part. The evidence suggests that Midwest omitted the certificate number prefixes on notice forms by design, because Midwest believed the prefix to be irrelevant. We have discussed our reluctance to endorse this practice above. Second, neither *Garrick* nor *Ohr* supports the proposition implicit in Midwest's fallback argument: that notice forms containing scrivener's errors necessarily comply with the statutory notice requirements. Thus, even if Midwest's omission of the prefix were a mere typographical or scrivener's error, *Ohr* leaves open the possibility that such errors may also constitute noncompliance with the notice requirements of the Property Tax Code. Accordingly, we reject Midwest's second argument.

We do acknowledge that several earlier cases rejected the notion that absolute perfection is required in tax foreclosure proceedings. See generally *In re Application of the County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1962 & Prior Years*, 121 Ill. App. 2d 129, 135, 257 N.E.2d 248, 251 (1970) (hereinafter *Petition of Hoffman*) ("Absolute perfection is not required and we should not permit purely technical objections to thwart statutory provisions to ensure the collectibility of taxes"), *rev'd on other grounds sub nom. Hoffman v. Stuckslager*, 48 Ill. 2d 262, 269 N.E.2d 501 (1971). However, the legislature has since amended the Property Tax Code to specifically include the strict compliance requirement, thus calling into question this earlier interpretation. *Petition of Ohr*, 100 Ill. App. 3d at 179-80, 426 N.E.2d at 949.

In closing, we believe that the legislature would respond to our opening query, "Strict." We recognize that our decision today may be looked upon as a rigid and legalistic application of the strict compliance language from section 22—40. However, the primary purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owners to pay their taxes, not to assist tax petitioners in depriving the true owners of their property. *Petition of the City of Chicago*, 213 Ill. App. 3d at 542, 572 N.E.2d at 1111. Moreover, we view the statute's strict compliance language as a bulwark. By opening the dike to permit any omission—however minute—of statutorily required information, we may unintentionally encourage a flood of litigants seeking case-by-case determinations of the strict compliance boundaries. We find that by failing to include the complete certificate number on the notice forms it sent to respondent Anderson, Midwest failed to comply with the notice requirements of the Property Tax

Code. Accordingly, we hold that the trial court, despite its meticulous reexamination of the record, erred as a matter of law when it reinstated the tax deed originally entered on November 27, 1995. We therefore reverse the trial court's September 11, 1996, order and reinstate the May 22, 1996, order vacating the tax deed.

Reversed.

CAMPBELL, P.J., and O'BRIEN, J., concur.