2025 IL App (1st) 232397-U

SIXTH DIVISION
May 30, 2025

No. 1-23-2397

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION OF THE COUNTY TREASURER AND EX OFFICIO COUNTY COLLECTOR OF COOK COUNTY, ILLINOIS FOR ORDER OF JUDGMENT AND SALE AGAINST REAL ESTATE ET AL. | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County |
| PETITION OF NEWLINE HOLDINGS, LLC, | ) ) | No. 2021COTD002421 |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) ) | The Honorable James Carroll, Judge Presiding. |
| TOSHA WOODS AND LAMONT HARRIS, | ) ) | |
| Respondents-Appellees. | ) ) | |

PRESIDING JUSTICE TAILOR delivered the judgment of the court.
Justices C.A. Walker and Gamrath concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The circuit court properly granted summary judgment to the respondents and denied the petitioner's application and petition for a tax deed. Because strict compliance with the notice requirements of section 22-5 of the Property Tax Code is required, the incorrect redemption amount in the petitioner's section 22-5 notice rendered it defective under the statute.

¶ 2     Newline Holdings, LLC (Newline) appeals the circuit court's order granting summary judgment in favor of Tosha Woods and Lamont Harris and denying its application and petition for a tax deed. On appeal, Newline argues that the circuit court erred by finding its notice defective under section 22-5 of the Property Tax Code because the redemption amount on the notice was not correct. Newline alternatively argues that its notice should be deemed sufficient, because it substantially complied with section 22-5's requirements. For the following reasons, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4     Newline received a certificate of purchase for the property located at 6202 S. Wolcott Avenue in Chicago, Illinois (Wolcott Property) at the Cook County 2017 Annual Tax Sale after it paid $4,326.80, which covered the delinquent taxes on the Wolcott Property for 2013, 2014, and 2017, as well as costs and interest due. On August 28, 2019, Newline paid an additional $518.94 for the second installment of the 2018 taxes on the Wolcott Property. Two days later, Newline "placed a posting" with the Cook County Clerk for the August 28th payment. However, because Newline did not pay the required indemnity fee of $80, the County Clerk did not post this payment to its Annual Tax Judgment, Sale, Redemption, and Forfeiture Record (judgment record).

¶ 5     On September 13, 2019, Newline prepared and submitted a notice to the County Clerk, as required by section 22-5 of the Property Tax Code (PTC) (35 ILCS 200/22-5) (West 2018). The notice indicated that the Wolcott Property had been sold for delinquent taxes and that the period of redemption would expire on November 10, 2021. The notice also indicated that a petition for a tax deed would be filed to transfer title and the right to possession of the property if redemption was not made on or before November 10, 2021. The notice added, "At the date of this notice the total amount which you must pay in order to redeem the [Wolcott Property] is $4,939.06." This

notice was sent to Tosha Woods, the title holder of record for the property, and to the occupants of the Wolcott Property, including Lamont Harris.

¶ 6     On August 19, 2021, Newline filed a petition for a tax deed and subsequently extended the redemption period to February 15, 2022. No redemption was made by that date.

¶ 7     On April 4, 2022, Newline filed an application for an order directing the County Clerk to issue a tax deed. The circuit court held a prove-up hearing on May 2, 2022, at which Harris appeared *pro se*. He informed the court that he spoke with Newline's attorney and attempted to pay the delinquent taxes but was one day late. Newline's attorney admitted that he spoke with Harris and acknowledged that Harris extended an offer for late redemption of the property but indicated that his client was not willing to entertain the offer. Newline informed the court that it found no redemption for the Wolcott Property when it inspected the County Clerk's judgment record, and asked the court to issue a tax deed. The court informed Harris that unless he had any valid objections to the issuance of the tax deed, it was "pretty likely" that Newline would become the owner of the Wolcott Property. Harris responded that he planned to work with an attorney to file an objection.

¶ 8     On March 27, 2023, Harris's attorney filed a motion for summary judgment on his behalf, arguing that Newline's section 22-5 notice failed to strictly comply with the Code because the redemption amount stated therein - $4,939.06 – was incorrect. In support of his motion, Harris attached an affidavit from Amanda Moressi, an attorney who averred that she personally inspected the County Clerk's judgment record for the 2017 Annual Sale of the Property in the Clerk's office. The judgment record was attached to her affidavit, and it lists all amounts posted to the sale that are included in the total amount required to redeem as required by sections 21-355 (35 ILCS 200/21-355) and 21-360 (35 ILCS 200/21-360) of the PTC. As of September 13, 2019, the

3

judgment record stated that the total redemption amount was $4,357.85, which includes the certificate amount ($4,326), a mailing fee ($18.05) and clerk's fees ($13). Newline's August 28, 2019, payment of $518.94 for the second installment of the 2018 taxes was not included.

¶ 9    On May 24, 2023, Newline filed a motion to strike Harris' motion for summary judgment, arguing that he lacked standing to challenge its section 22-5 notice. The next day, Woods filed a motion for summary judgment, raising the same arguments as Harris.

¶ 10    On June 30, 2023, Newline filed a cross-motion for summary judgment, arguing that Harris lacked standing to challenge its section 22-5 notice because he was not the last known taxpayer of record at the time of notice. Newline also argued that the court should grant summary judgment in its favor. Despite conceding that it "believes that the Cook County Clerk did not post [its payment of $518.94 for 2018 taxes on the Wolcott Property to the judgment record] based upon the indemnity fee not being included," Newline argued that the redemption amount stated on its section 22-5 notice was nevertheless correct because it "followed proper procedure for payment, posting of charges, and submission of the 22-5 notice with all pertinent information as required by the [PTC]."

¶ 11    Newline attached several documents and affidavits in support of its motion. Terrence Elkin, Newline's Portfolio Director, averred in his affidavit that on August 28, 2019, he tendered a payment to the Cook County Treasurer on behalf of Newline in the amount of $518.94, and that he delivered a posting sheet to the County Clerk two days later so it could be posted to the judgment record for the Wolcott Property. Kristinel Clinton, a Newline paralegal, stated in her affidavit that she reviewed Cook County's records to determine the tax assessee for the Wolcott Property on September 13, 2019, and learned that Tosha Woods was the last known taxpayer. Carolyn Eloby, an employee of the County Clerk's Tax Sales and Posting Division, attested to her familiarity with

4

the procedures for sales and postings of delinquent property tax sales, the County Clerk's policy requiring payment of the indemnity fee to avoid rejection of a posting, and the County Clerk's receipt of Newline's $518.94 payment on August 28, 2019, which did not include the $80.00 indemnity fee.

¶ 12    On July 13, 2023, Harris and Woods filed a Rule 191(a) motion to strike the exhibits attached to Newline's cross-motion for summary judgment, arguing they were not authenticated or certified. They also moved to strike Elkin's and Clinton's affidavits, arguing they failed to say their statements were based on their personal knowledge and failed to attach the documents upon which they relied. Newline argued in response that the affidavits complied with Rule 191(a); in the alternative, it submitted amended affidavits for Elkin and Clinton.

¶ 13    On September 28, 2023, the Circuit Court held a hearing on the parties' cross-motions for summary judgment and Harris' and Woods' motion to strike. The record on appeal does not contain a transcript of the hearing or a bystander's report. In its November 17, 2023, order, the court stated it heard arguments from the parties on their cross motions for summary judgment and on Harris and Woods' motion to strike and that it took their arguments and briefing into consideration. It granted Harris and Woods' motions for summary judgment based on Newline's failure to strictly comply with section 22-5 of the PTC, and denied Newline's petition and application for a tax deed. Newline timely appealed.

¶ 14                                    II. ANALYSIS

¶ 15    Newline argues that the circuit court erred when it granted summary judgment to Harris and Woods because: (1) it fulfilled its obligation to file and post the second installment of the 2018 tax payment to the County Clerk's Sale Record; (2) its amended affidavits create a genuine issue

5

of material fact as to whether it complied with Section 22-5's notice requirements; and (3) the PTC does not demand absolute perfection when complying with its statutory provisions.

¶ 16                                      A. Standard of Review

¶ 17    Motions for summary judgment are governed by section 2-1005 of the Code of Civil Procedure. 735 ILCS 5/2-1005 (West 2022). Summary judgment should be granted "only where the pleadings, depositions, admissions and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to judgment as a matter of law." *Pielet v. Pielet,* 2012 IL 112064, ¶ 29. We review a trial court's grant of summary judgment *de novo*. *In re County Treasurer and ex officio County Collector of Cook County*, 2023 IL App (1st) 220182, ¶ 15 (*ALW Capital*).

¶ 18                                      B. Posting Requirement

¶ 19    Section 22-5 of the PTC requires a purchaser or assignee to deliver a completed notice to the county clerk for mailing to the party in whose name the taxes are last assessed. 35 ILCS 200/22-5. The statute sets out a mandatory form notice that must be used to advise the property owner of the sale, the redemption deadline, the redemption amount, and the payment process. *Id*. The notice directs the owner to contact the County Clerk for exact amounts and instructions. *Id*. The explicit language of Section 22-5 reflects the steps purchasers are required to take in order to obtain a tax deed. *Id.*

¶ 20    Newline admits that the redemption amount on its section 22-5 notice ($4,939.06) does not match the redemption amount on the County Clerk's judgment record ($4,357.85). However, it argues that because the redemption amount on its section 22-5 notice "includes all taxes Newline paid and posted," the County Clerk's "fail[ure] to properly record" its subsequent payment of

6

$518.94 for 2018 taxes on the Wolcott Property means that the redemption amount on its section 22-5 notice, and not the amount in the judgment record, is the correct one.

¶ 21    While section 21-355 of the PTC (35 ICLS 200/21-355 (West 2022)) states that the redemption amount shall include subsequent taxes paid by the certificate holder, section 21-360 of the PTC states:

"[t]he county clerk shall not be required to include amounts [in its judgment record] described in paragraphs (c) through (k) of Section 21-355 [including payment of subsequent taxes] in the payment for redemption or the amount received for redemption *** unless the tax certificate holder has filed and posted with the county clerk prior to redemption *** an official, original or duplicate receipt for payment of those fees, costs, and expenses permitted ***. Upon submission of an official original or duplicate receipt, the county clerk shall stamp the date upon each document received. **** The confirmation from the county clerk shall indicate the date of receipt and shall serve as proof that the document was received by the county clerk. The county clerk shall not be required to include amounts described in paragraphs (c) through (k) of Section 21-355 [including payment of subsequent taxes] in the payment for redemption or the amount received for redemption *** unless the purchaser *** obtains this acknowledgement of delivery."

35 ILCS 200/21-360 (West 2022).

¶ 22    Newline admits that it never received confirmation from the County Clerk's office of its payment of $518.94 for the 2018 taxes. *Cf. In re Application of the County Treasurer and ex officio County Collector of Will County,* 2024 IL App (3d) 220134, ¶¶ 1, 53, 56 (*Sabrina Investments*) (petitioners there made the relevant tax payments, paid the associated filing and service fees, and received file-stamped receipts from the clerk's office). Newline further admitted in its cross motion

for summary judgment that it "believes that the Cook County Clerk did not post [its payment for 2018 taxes on the Wolcott Property to the judgment record] based upon the indemnity fee not being included." Yet under Section 21-295 (a-5) of the PTC, a holder of a tax certificate is required to pay the County Treasurer a nonrefundable $80 fee "for each year that all or a portion of subsequent taxes are paid by the tax purchaser and posted to the tax judgment, sale, redemption, and forfeiture record." 35 ILCS 200/21-295(a-5) (West 2022). Because Newline failed to pay the requisite indemnity fee, the County Clerk did not post its payment for the 2018 taxes on the Wolcott Property to the judgment record. Therefore, Newline's assertion that the County Clerk "failed to properly record [its] subsequent tax payment" lacks merit, and the redemption amount in the County Clerk's judgment record – not the redemption amount on Newline's section 22-5 notice – is correct. If we were to accept Newline's position that its failure to pay the indemnity fee should not matter, then it would undermine the purpose of the indemnity provisions of the PTC and run counter to the legislature's intent. See *Malmloff v. Kerr,* 227 Ill. 2d 118, 123 (2007) (noting that the legislature created the tax deed indemnity fund "[i]n order to alleviate the harsh consequences that follow tax sale proceedings"); see also *Demos v. Pappas,* 2011 IL App (1st) 100829, ¶ 36 (stating that "the indemnity fund, consisting of fees collected from tax purchasers by the county collector, is available to indemnify any qualified person who has lost property due to a tax sale under the Property Tax Code and is an essential part of the Property Tax Code").

¶ 23                                  C. Affidavits

¶ 24      Newline also argues that the affidavits it submitted demonstrate that it properly prepared and delivered the posting sheet for its section 22-5 notice to the County Clerk, and that because it was not notified that the posting sheet had been rejected based on its failure to pay the indemnity fee, this should excuse the fact that the redemption amount on its section 22-5 notice does not

match the redemption amount in the judgment record. However, even if all of the facts in Newline's affidavits are accepted as true – Newline paid the second installment of the 2018 taxes on the Wolcott Property, delivered a posting sheet to the County Clerk before preparing its section 22-5 notice, was not notified by the County Clerk that the posting had been rejected, and included the amount it paid for the 2018 taxes in the redemption amount on its section 22-5 notice – it does not change the fact that the redemption amount on Newline's section 22-5 does not match the amount in the judgment record. And because Newline does not dispute that the "county judgment book does not reflect [its] subsequent payment" for 2018 taxes on the Wolcott Property, its affidavits create no genuine issues of material fact. As we have said before, "[a] tax purchaser is obliged to look at information contained in county tax and title records so that he may serve the notices required by the Revenue Act." *Application of County Treasurer and Ex-Officio County Collector of Cook County*, 32 Ill. App. 3d 161, 164 (1975).

¶ 25                          D. Strict Compliance

¶ 26    Newline alternatively argues that even if the redemption amount on its notice did not match the amount in the judgment record, this technical defect should not defeat its application for a tax deed, as strict compliance with section 22-5's requirements is not required. To support its argument, Newline relies on *In re County Treasurer and ex officio County Collector of Cook County*, 2022 IL App (1st) 211511 *(Capital Equity Land Trust)*, where the trial court found that the petitioner was entitled to a tax deed for a property even though it listed an "incorrect, nonexistent address" on its section 22-5 notice. *Id*. ¶ 15. On appeal, we affirmed the trial court's decision and concluded that the section 22-5 notice complied with the PTC even though the address in the notice was incorrect, because the petitioner "rel[ied] on the address as listed in the tax records when completing its section 22-5 notice" and "properly listed the address as designated in the

official government records." *Id*. ¶¶ 30-31. *Capital Equity Land Trust* is distinguishable because the petitioner there relied on information in official government records to complete its section 22-5 notice. Here, by contrast, Newline failed to rely on the redemption amount in the County Clerk's judgment record when completing its section 22-5 notice and instead, based its redemption amount upon its own calculations. Although it asserts that it relied on the "best available information to accurately prepare the [section] 22-5 notice," it simply had to check the County Clerk's judgment record to verify that the redemption amount was correct before filing its notice. See 35 ILCS 200/21-160 (West 2018) (stating that the judgment record shall show the "total amount of redemption" and shall be "kept in the office of the county clerk"). Because Newline failed to state the redemption amount "as designated in the official government records," its section 22-5 notice was deficient. *Capital Equity Land Trust*, 2022 IL App (1st) 211511, ¶ 31.

¶ 27    This court has repeatedly held that tax purchasers are not entitled to have their applications and petitions for a tax deed approved if they fail to strictly comply with the notice requirements under the PTC. See, *e.g., In re County Treasurer & Ex Officio County Collector of Cook County, Ill.,* 2011 IL App (1st) 101966, ¶¶ 36, 38, 53 (*Glohry*) (finding that the trial court properly denied petitioner's application and petition for a tax deed when he listed the incorrect redemption period on the section 22-5 notice, reasoning that "[a] tax deed petitioner must do as required by the statute "*[i]n order to be entitled to a tax deed*" and "[i]t would be absurd to find the legislature intended a purchaser to be entitled to a tax deed even where he had not done as required by the statute") (emphasis in original); *Application of County Collector,* 295 Ill. App. 3d 703, 710-11 (1998) *(Midwest Real Estate Investment Company*) (vacating the issuance of a tax deed and concluding that the petitioner failed to comply with the notice requirements of the PTC where the petitioner failed to include the complete certificate number on the notice forms it sent to respondent); *In re*

*County Treasurer,* 2013 IL App (1st) 130463, ¶ 15 (*Equity One Investment Fund)* (finding that the trial court properly denied petitioner's application and petition for a tax deed where the petitioner failed to list the property's location, reasoning that "a deficient notice is not regarded as any notice within the meaning of the statute"); *In re County Treasurer,* 2013 IL App (1st) 130103, ¶¶ 45-46 (*Salta Group*) (affirming the trial court's decision to deny petitioner's application for a tax deed when the petitioner included an incorrect redemption date in its section 22-5 notice, reasoning that the PTC "imposes a minimal burden on tax purchasers to provide parties with an interest in property the correct notice regarding the exact due date when the redemption period expires").

¶ 28    These cases underscore that strict compliance with section 22-5 is "necessary in order for a purchaser to receive a tax deed" and that "there cannot be strict compliance when the section 22-5 notice form contains incorrect information or fails to provide available information." *Capital Equity Land Trust*, 2022 IL App (1st) 211511, ¶¶ 26-27. The reason for this strict construction is because the "primary purpose of the tax deed system is to coerce tax-delinquent property owners to pay their taxes, not to assist others in depriving the true owners of their property." *ALW Capital,* 2023 IL App (1st) 220182, ¶ 17. Thus, when a tax purchaser fails to strictly comply with section 22-5's notice requirements, the court will assume prejudice to the property owner irrespective of whether the owner was misled by the defective notice. *Midwest Real Estate Investment Co.*, 295 Ill. App. 3d at 708; *Capital Equity Land Trust*, 2022 IL App (1st) 211511, ¶ 20.

¶ 29    Section 22-5's notice requirements explicitly direct purchasers to provide information that the owner may rely upon, including the redemption deadline, redemption amount, and the payment process. These requirements must be strictly followed, because an incorrect notice deprives the property owner of a fair opportunity to exercise his or her redemption rights. In this case, Newline's failure to state the correct amount necessary to redeem the property on its section 22-5 notice was

11

fatal to its ability to obtain a tax deed. The trial court properly granted summary judgment to Harris and Woods.

¶ 30                                   III. CONCLUSION

¶ 31     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 32     Affirmed.