# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Application of the County Treasurer & ex officio County Collector*,
### 2011 IL App (1st) 101966

---

| | |
|---|---|
| Appellate Court Caption | *IN RE* APPLICATION OF THE COUNTY TREASURER AND *EX OFFICIO* COUNTY COLLECTOR OF COOK COUNTY, ILLINOIS, for Order of Judgment and Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 2004 (Glohry, LLC, Petitioner-Appellant, v. OneWest Bank and Graciela Garcia, Respondents-Appellees). |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-1966 |
| Filed | August 25, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Petitioner's application and petition for a tax deed were properly denied where petitioner failed to strictly comply with the notice requirement in section 22-5 of the Property Tax Code and failed to demonstrate that it exercised due diligence in serving the notice required by section 22-10 of the Code. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-COTD-2527; the Hon. Edward P. O'Brien, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Terry Carter, of Carter & Reiter, Ltd., and Richard D. Glickman, both of Chicago, for appellant.

Jeffrey S. Blumenthal, of Slutzky & Blumenthal, of Chicago, for appellee.

Panel

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.

Justices Pucinski and Salone concurred in the judgment and opinion.

## OPINION

¶ 1     In a scenario that has been replayed countless times in our troubled real estate economy, Graciela Garcia failed to pay a year's real estate taxes ($1,383.50) on her mortgaged property, which opened an opportunity for an attempted tax deed purchase of her two-flat apartment building on Chicago's Southwest side. This appeal arises from the trial court's denial of a tax deed pursuant to the Property Tax Code (Code). 35 ILCS 200/1-1 *et seq.* (West 2008). The attempted purchaser of the property, tax deed petitioner Glohry, LLC, asserts the trial court erred by denying its application and petition for a tax deed. We affirm.

¶ 2                              I. BACKGROUND

¶ 3     The essential facts in this appeal are generally undisputed. Graciela Garcia was the record owner of a two-flat building with a basement located at 2943 West 43rd Street in Chicago. To pay for the property in June of 2005, she obtained a mortgage from a mortgage broker, executed two promissory notes in favor of MILA, Inc. (MILA), and granted two mortgages to Mortgage Electronic Registration Systems, Inc. (MERS), which has at all times remained the mortgagee of record. The first mortgage document identified MILA as the lender and stated that MERS was acting "solely as nominee for Lender and Lender's successors and assigns." The second mortgage document contained nearly identical language. Both mortgage documents provided the address and phone number for MERS, as well as an 18-digit "MIN," an acronym for "mortgage identification number." On August 1, 2005, MILA assigned both promissory notes to IndyMac Bank, F.S.B. (Indy). Indy subsequently assigned the two notes to Deutsche Bank National Trust Company (Deutsche), the current noteholder, on October 21, 2005. Indy remained the servicer of the loans.

¶ 4     On June 21, 2006, Ridge TP, LLC (Ridge), purchased Garcia's property at a public auction due to unpaid 2004 taxes, and a certificate of purchase was issued to Ridge on August 15, 2006. The parties agree that the original statutory period in which the property could be redeemed by Garcia or other interested parties was two years and six months from

the date of sale. See 35 ILCS 200/21-350(b) (West 2006). The parties also agree that two years and six months from the date of sale would be Sunday, December 21, 2008. We note that while petitioner contends this date constitutes the expiration of the original redemption date, respondents essentially contend that date could not fall on a Sunday and, thus, would be Monday, December 22, 2008. See 5 ILCS 70/1.11 (West 2006) ("[t]he time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is *** Sunday *** and then it shall also be excluded"). This trivial-sounding inconsistency proved to be central to the decision of the trial court.

¶ 5        On October 5, 2006, Ridge extended the redemption period to February 9, 2009. Five days later, Ridge submitted an official notice to be sent to Garcia at the subject property pursuant to section 22-5 of the Code. 35 ILCS 200/22-5 (West 2006). The form of the notice required that the redemption expiration date be included in three different places on the form. Notwithstanding the extension of the redemption period five days earlier, Ridge listed the redemption period's expiration date as December 21, 2008, in all three blanks. It is undisputed that Garcia never received the notice sent by the clerk's office.

¶ 6        Ridge assigned the certificate of purchase to petitioner on June 28, 2007. On July 11, 2008, Indy was placed in receivership by the Federal Deposit Insurance Corporation and became IndyMac Federal Bank, F.S.B. (Indy Federal). In September 2008, Richard Glickman, petitioner's attorney, and Ronald Ohr took certain measures to ascertain the persons and entities to which petitioner needed to send the notice set forth in section 22-10 of the Code and the addresses to which said notice would be sent. See 35 ILCS 200/22-10, 22-15, 22-20, 22-25 (West 2008). Their specific efforts in this arcane, but important legal arena will be punctiliously delineated below.

¶ 7        On September 24, 2008, petitioner extended the redemption period so that it would expire on March 23, 2009, and filed a petition for a tax deed. Petitioner subsequently made attempts to serve Garcia, MERS and MILA with the notice set forth in section 22-10. On March 20, 2009, OneWest Bank (OneWest) acquired Indy Federal and became the successor servicer to the two notes. Three days later, the redemption period expired without redemption occurring.

¶ 8        On April 16, 2009, Glickman filed on petitioner's behalf an application for a tax deed, alleging in pertinent part, that on October 10, 2006, the notice required by section 22-5 of the Code had been delivered to the county clerk to mail to Garcia. The application also alleged that Garcia, MERS and MILA were owners, occupants and parties interested in the subject property. Regarding the section 22-10 notice, the application represented that the sheriff's return of service showed that the manner of service for Garcia was certified mail sent on October 28, 2008, the manner of service for MERS was "Corporate" on October 9, 2008, and the manner of service for MILA was certified mail sent October 1, 2008.

¶ 9        On May 4, 2009, OneWest's attorney, Jeffrey Blumenthal of Slutzky and Blumenthal, filed a response to petitioner's application which essentially denied that petitioner complied with section 22-5, admitted that Garcia and MERS were owners, occupants or parties interested in the party and further alleged that the petitioner's list of interested parties entitled

to notice pursuant to section 22-10 was incomplete. OneWest denied that Garcia, MERS or MILA received notice. OneWest requested that the trial court deny the application and dismiss the petition for a tax deed with prejudice. On November 24, 2009, Blumenthal also filed a response on behalf of Garcia, which generally provided the same representations as OneWest's response.

¶ 10    On May 18, 2010, petitioner and respondents tendered their "Joint Trial Materials," which included their stipulations, certain exhibits and the majority of the aforementioned facts and documents. We recite only that testimony which is relevant to the issues raised on appeal. Ohr, a member of petitioner, testified that he inspected the subject property three times in September 2008 and brought his inspection report to Glickman. The report essentially pertained to any indicia, or lack thereof, of who occupied the subject property and described the property's condition.

¶ 11    Glickman, who had practiced in the tax deed area for almost 50 years, testified that Ohr's office had prepared the first notice extending the redemption period. Glickman testified that section 22-5 set forth notice to be submitted to the county clerk within 4 months and 15 days of the tax sale to be directed to the last tax assessee of record, in this case Garcia, and that the redemption date was required to be included in the notice. He acknowledged that when the section 22-5 notice was tendered to the county clerk on October 10, 2006, it listed the redemption date of December 21, 2008, even though the redemption expiration date had already been extended once to February 9, 2009.

¶ 12    Glickman testified that prior to the expiration of the extended period of redemption on March 23, 2009, there was an additional notice-serving period, during which a diligent inquiry and effort had to be made to serve all owners, occupants and interested parties. Petitioner retained Glickman for this purpose. Pursuant to his investigation, he had Ohr inspect the property and prepare a report and apparently at some point, located Garcia's warranty deed from a tract book search. Glickman also identified his search results from the Chicago Abstract, Inc., regarding the subject property on September 11, 2008. The results indicated that on June 28, 2005, the subject property was deeded to Garcia and she granted two mortgages on the property to MILA. The three documents were recorded on August 10, 2005. Glickman also testified that he always searched the Cook County recorder's records both before and after obtaining the Chicago Abstract document but could not specifically recall doing so in this case. Glickman apparently determined from the Chicago Abstract, Inc., results and the mortgage documents that Garcia, MILA and MERS had sufficient interests in the property to warrant directing notice toward them. On September 22, 2008, Glickman took certain additional steps, including performing an Accurint search, to attempt to identify occupants of the property and locate Garcia. His attempt to telephone Garcia was unsuccessful. Our record also indicates that in October 2008, petitioner unsuccessfully attempted to mail notice to Garcia but whether these particular attempts were sufficient is not at issue on appeal.

¶ 13    Glickman reviewed the mortgage documents to determine where to serve the remaining entities and observed that the documents referred to both MERS, the mortgagee as nominee for the lender, and MILA, the lender. As to MERS, the parties stipulated that during the

statutory notice-serving period, MERS was served with notice, which it forwarded to Indy Federal. Regarding MILA, Glickman checked the Illinois Secretary of State's website to identify MILA's registered agent in Illinois but saw that MILA, a Washington corporation, had withdrawn its foreign registration in 2007. Glickman found that as a result, MILA was a nonentity in Illinois. He believed that MILA had a recorded interest in the property as the lender but that it was his duty to make a diligent inquiry and effort to find MILA only if it "had a nexus in Illinois." He also believed there was no requirement to serve an out-of-state corporation that has withdrawn from Illinois, regardless of whether it had a recorded interest, and that it was MILA's duty as an interested party to keep a registered agent in Illinois. In addition, Glickman believed that "service on MERS, as their registered agent, would have been service on MILA even though they've withdrawn if they were the lender, or any successor lender that they might have had that they didn't report an interest to." Nonetheless, he searched for MILA's president to determine where to send notice. We note that our record includes the letter, apparently containing the section 22-10 notice, sent by certified mail to MILA on October 1, 2008, care of Mark Hikel, MILA's president, at the same address listed for Hikel in the Illinois Secretary of State website's search results. That address was 6021 244th Street Southwest in Mountlake Terrace, Washington, 98043. We also note that the envelope was marked "return to sender" on October 4, 2008, with a forwarding address for MILA at 601 Union Street, Suite 4400 in Seattle, Washington, 98101-1367. In addition, the return receipt was file stamped by the clerk's office on October 22, 2008. Glickman testified that he did not check the court file between September 23, 2008, and December 23, 2008, to determine what happened to the certified mail sent to MILA. Glickman also testified that he did not examine the Washington Secretary of State's website regarding MILA because his attempt to serve MILA was gratuitous. Published notice directed toward Garcia, MERS and MILA was provided from November 19, 2008, to November 21, 2008.

¶ 14       Glickman further testified that he was familiar with MERS mortgages, although there were different types. He had also occasionally examined chapters 10 and 11 of a publication by the Illinois Institute for Continuing Legal Education (IICLE) titled "Real Estate Taxation," which was authored by Douglas Karlen and Rodney Slutzky but essentially disagreed with its representation that MERS should be contacted to obtain the name of the current noteholder and that both the current noteholder and MERS should be served with notice. He believed there was no reason to call MERS in this instance because it was served with notice and was the only entity, as mortgagee, nominee and trustee for the lender, which was entitled to notice. When he read a provision of the IICLE indicating that MERS was akin to a land trust, Glickman testified that a beneficiary of a land trust is served with notice when the beneficiary is disclosed of record. In addition, he testified that due to noteholders not receiving notice regarding unrecorded documents in the 1990s and early 2000s, MERS's purpose was to permit the free assignment of mortgage notes without having to record assignments and to act as a clearing house. He further testified that MERS was formed to "cover the gap" and accept service. He did not previously know that "MIN" stood for "mortgage identification number" or that a MIN number appeared on the top of a MERS mortgage.

¶ 15    Rodney Slutzky testified, in pertinent part, that in November 2009, Blumenthal asked him to conduct a search for MILA. After spending but three or four minutes conducting an Internet search with the Google search engine, he learned that MILA had filed for bankruptcy and that the website for the bankruptcy trustee's law firm revealed five addresses, one of which we observe was similar to the forwarding address added to the certified letter sent to MILA but marked "return to sender." The address was 4400 Two Union Square, 601 Union Street, Seattle, Washington, 98101-2352. Slutzky also visited the Washington Secretary of State's website, which listed MN Service Corporation as MILA's agent and the same address as the forwarding address added to the certified letter sent to MILA. The website also showed that Geoffrey Groshong, MILA's bankruptcy trustee, was also MILA's president and listed the same address for Groshong as the aforementioned address on his law firm's website. Exhibits corroborating the steps taken in Slutzky's Internet search were admitted into evidence.

¶ 16    Charles Boyle, the assistant vice president of the default risk management litigation department of OneWest, testified that he was previously employed with OneWest's predecessors, Indy and Indy Federal. OneWest currently serviced the loans in question on behalf of Deutsche and its responsibilities included maintaining a valid interest in the mortgages and the subject property, and ensuring that taxes were paid. Boyle testified that pursuant to the pooling and servicing agreement between Indy and Deutsche, Indy had authority to act regarding the loan without first consulting with the lender. Boyle also testified that a limited power of attorney executed by Deutsche in favor of OneWest similarly gave OneWest the power to act as if it were the lender and take all actions regarding the loan without first conferring with Deutsche. In addition, he testified that a corporate resolution between MERS and OneWest, dated March 19, 2009, permitted employees and officers of OneWest to sign documents on behalf of MERS without conferring first with MERS and that Indy and Indy Federal had previously had the same authority. Boyle further testified that MERS permitted lenders and servicers to register a mortgage and easily assign interests between different servicing entities. He testified that loans were commonly transferred and MERS generally would forward notice of a tax sale to the servicer. When counsel informed Boyle that MERS forwarded the section 22-10 notice it received to Indy Federal, Boyle testified he did not know why his company did not pay the taxes. Following Boyle's testimony, the court entered a continuance and ordered the parties to submit briefs.

¶ 17    At a hearing on June 10, 2010, the trial court denied the application and petition for a tax deed following the parties' arguments. Regarding the notice required by section 22-10, the court found, in pertinent part, that service of notice to MILA, which had assigned its interest in the note, was a moot point. The court also found that petitioner made a diligent inquiry to serve Garcia with notice. As to MERS, the court found it was properly served with notice through its Illinois agent. The court found that as to any unrecorded interests, including an unrecorded assignment, the best way to receive notice is to record one's interest. As a result, the court found there was no obligation for a petitioner to search for potential assignees who had not recorded their interest and that petitioner had made a diligent inquiry and effort to serve the section 22-10 notice.

¶ 18    The trial court found, however, that petitioner failed to satisfy section 22-5 of the Code because the date included in the notice was incorrect. Specifically, the court found that substantial compliance, rather than strict compliance, was required and that either the original or extended redemption date would have sufficed but that neither of those days would have been December 21, 2008, because it was a Sunday. The court found that prejudice regarding an error in the content of the notice was to be presumed, even though Garcia never received notice.

¶ 19                              II. SECTION 22-5 NOTICE

¶ 20    Petitioner first asserts that the section 22-5 notice in this case was sufficient. Petitioner contends it is unclear what standard of compliance applies to section 22-5, but urges us to find that substantial compliance is sufficient. In contrast, respondents contend that strict compliance is required. This issue of first impression presents a question of statutory construction, which we review *de novo*. *In re Application of the County Collector*, 356 Ill. App. 3d 668, 670 (2005).

¶ 21    Our primary objective in interpreting a statute is to determine and give effect to the legislature's intent. *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 441 (2005). All other rules of statutory construction are subordinate to this rule. *Barragan*, 216 Ill. 2d at 441. The most reliable indicator of the legislature's intent is the statute's language, which must be given its plain and ordinary meaning. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). In determining the statute's plain meaning, we consider the statute in its entirety, the subject being addressed and the apparent purpose of the legislature in enacting the statute. *Solon*, 236 Ill. 2d at 440. If possible, a statute should be construed so that no language is rendered meaningless or superfluous. *In re Application of the County Collector*, 356 Ill. App. 3d at 670. In addition, the statutory construction principle that the expression of one thing in a statute excludes any other thing may be used to ascertain the legislature's intent where it is unclear. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 153 (1997). This maxim is applied only where it appears to reflect, and not defeat, the legislature's intent. *Bridgestone/Firestone, Inc.*, 179 Ill. 2d at 153-54; see also *People v. Roberts*, 214 Ill. 2d 106, 117 (2005) (the maxim *expressio unius est exclusio alterius* is subordinate to the primary principle that the legislature's intent controls the construction of a statute).

¶ 22    Where a statute's language is clear and unambiguous, the court must apply it as written without resorting to extrinsic aids of statutory interpretation. *Solon*, 236 Ill. 2d at 440. Nonetheless, if a statute could be understood by reasonably well-informed persons in multiple ways, the statute will be considered ambiguous. *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 288 (2008). Where a statute's meaning is ambiguous, courts may look beyond the statutory language and consider the law's purpose, the evil that it was intended to remedy and the statute's legislative history. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 217 (2008). Furthermore, we may consider the resulting consequences from construing the statute in either manner and

presume the legislature intended no inconvenient, absurd or unjust consequences. *Solon*, 236 Ill. 2d at 441.

¶ 23 Section 22-5, titled "Notice of sale and redemption rights," states in pertinent part that "*[i]n order to be entitled to a tax deed*, within 4 months and 15 days after any sale held under this Code, *the purchaser or his or her assignee shall deliver* to the county clerk a *notice* to be given to the party in whose name the taxes are last assessed as shown by the most recent tax collector's warrant books, in at least 10 point type *in the following form completely filled in.*" (Emphases added.) 35 ILCS 200/22-5 (West 2006). The form set forth in section 22-5 includes three blanks in which the purchaser or assignee must state the date on which the redemption period will expire. 35 ILCS 200/22-5 (West 2006). Section 22-5 further states that "[w]ithin 10 days after receipt of said notice, the county clerk shall mail to the addresses supplied by the purchaser or assignee, by registered or certified mail, copies of said notice to the party in whose name the taxes are last assessed as shown by the most recent tax collector's warrant books." 35 ILCS 200/22-5 (West 2006).

¶ 24 Respondents essentially contend that the statute clearly states that in order to be entitled to a tax deed, a purchaser or his assignee must completely fill in the take notice form, which is ultimately given to the last tax assessee, and that implicit in this requirement is that the form must be filled in with correct information. Thus, to allow an assignee to be entitled to a tax deed despite having filled in the form with erroneous information would contravene the clear intent of the statute and be absurd. Respondents contend it follows that strict compliance is required to fulfill the legislature's intent. We find it notable that the statute does not merely state that the purchaser or assignee "shall" take certain actions, but that it strongly indicates the consequence of failing to take those actions, *i.e.*, that the purchaser will not be entitled to a tax deed.

¶ 25 Contrarily, petitioner contends that we must read the post-sale notice provided in section 22-5 with other provisions of the Code. Section 22-10, titled "Notice of expiration of period of redemption," provides for notice which is generally subsequent to that set forth in section 22-5 and states, in pertinent part, that "*[a] purchaser or assignee shall not be entitled to a tax deed to the property sold unless*, not less than 3 months nor more than 6 months prior to the expiration of the period of redemption, he or she gives notice of the sale and the date of expiration of the period of redemption to the owners, occupants, and parties interested in the property, including any mortgagee of record, as provided below." (Emphasis added). 35 ILCS 200/22-10 (West 2008). In addition, section 22-40, titled "Issuance of deed; possession," states as follows:

> "If the redemption period expires and the property has not been redeemed and all taxes and special assessments which became due and payable subsequent to the sale have been paid and all forfeitures and sales which occur subsequent to the sale have been redeemed and the notices required by law have been given and *** the petitioner has complied with all the provisions of law entitling him or her to a deed, the court shall so find and shall enter an order directing the county clerk on the production of the certificate of purchase and a certified copy of the order, to issue to the purchaser or his or her assignee a tax deed. *The court shall insist on strict*

-8-

*compliance with Section 22-10 through 22-25*." (Emphasis added). 35 ILCS 200/22-40(a) (West 2008).

¶ 26    Appellant contends that because section 22-40 specifies that "strict compliance" is required for that section's notice provisions, by implication, strict compliance with the other notice in section 22-5 is not required and substantial compliance will suffice. It surely merits mention that because the prefatory language found in section 22-5 is substantially the same as the prefatory language found in section 22-10, it could easily be argued that reading such language in 22-5 to require strict compliance would also require the same to be said of the language in section 22-10. Compare 35 ILCS 200/22-5 (West 2006) ("In order to be entitled to a tax deed, *** the purchaser or his or her assignee shall ***."), with 35 ILCS 200/22-10 (West 2008) ("A purchaser or assignee shall not be entitled to a tax deed to the property sold unless ***."). Thus, reading the prefatory language in section 22-5 to require strict compliance would render the "strict compliance" language found in section 22-40 superfluous.

¶ 27    Accordingly, if we follow the plain meaning of section 22-5 by finding strict compliance is required, the "strict compliance" language of section 22-40 may be rendered superfluous. On the other hand, if we give meaning to the language in section 22-40 by finding strict compliance with section 22-5 is not required, we contravene the intent indicated by the prefatory language of section 22-5 and risk rendering such language meaningless. We find these provisions of the Code when read together expose an ambiguity, if not a contradiction, regarding whether strict or substantial compliance with section 22-5 is required to obtain a tax deed. Fortunately, a thorough review of the legislative history of these provisions sheds sufficient light to resolve this ambiguity.

¶ 28    Over the last century, the Code, formerly known as the Revenue Act, has been repeatedly amended and recodified. For clarification, we refer to the provision currently found in section 22-5 as the post-sale notice provision, the provision currently found in section 22-10 as the pre-expiration notice provision, and the provision currently found in section 22-40 as the tax deed provision. We further note that the latter provisions were enacted long before the post-sale notice provision.

¶ 29    The tax deed provision has not always expressly required "strict compliance" with the the pre-expiration notice provision. Hurd's Rev. Stat. 1909, ch. 120, ¶¶ 216, 219; Hurd's Rev. Stat. 1905, ch. 120, ¶¶ 216, 219; Hurd's Rev. Stat. 1881-82, ch. 120, ¶¶ 216, 219. Notwithstanding the absence of such language, our supreme court held that strict compliance with this notice requirement was required. *Clark v. Zaleski*, 253 Ill. 63, 74 (1911); *Bailey v. Smith*, 178 Ill. 72, 74 (1899). Our supreme court also recognized that the statute was enacted to carry our the mandate of the Illinois Constitution. *Gaither v. Lager*, 2 Ill. 2d 293, 299 (1954). Section 5 of article IX of the Constitution of 1870 stated as follows:

"The right of redemption from all sales of real estate for the non-payment of taxes or special assessments of any character whatever, shall exist in favor of owners and persons interested in such real estate, for a period of not less than two years from such sales thereof. And the general assembly shall provide by law for reasonable

notice to be given to the owners or parties interested, by publication or otherwise, of the fact of the sale of the property for such taxes or assessments, and when the time of redemption shall expire: *Provided*, that occupants shall in all cases be served with personal notice before the time of redemption expires." Ill. Const. 1870, art. IX, § 5.

See also Ill. Const. 1970, art. IX, § 8(e) ("Owners, occupants and parties interested shall be given reasonable notice of the sale and the date of expiration of the period of redemption as the General Assembly provides by law.").

¶ 30       In July 1967, the General Assembly amended the tax deed provision by adding that "the court shall insist on strict proof of notice." (Internal quotation marks omitted.) *In re Application of County Collector*, 66 Ill. App. 3d 437, 445 (1978); 1967 Ill. Laws 2134. Regrettably, transcripts of the legislative history from this time period are unavailable. *Hoffman Estates Professional Firefighters Ass'n v. Village of Hoffman Estates*, 305 Ill. App. 3d 242, 251 (1999) (transcripts of legislative debates first became available in 1971). It appears however, that this amendment did not change the law regarding the standard of compliance required for the pre-expiration notice but, rather, memorialized what was already understood. In 1970, the tax deed provision was amended to specify that "[t]he court shall insist on strict compliance with the provisions of Section 263 of this Act," section 263 being the pre-expiration notice provision. Pub. Act 76-2329 (eff. July 1, 1970) (amending Ill. Rev. Stat. 1967, ch. 120, ¶ 747); Ill. Rev. Stat. 1969, ch. 120, ¶¶ 744, 747; Ill. Rev. Stat. 1971, ch. 120, ¶¶ 744, 747.

¶ 31       Several years later, the post-sale notice provision was enacted. Pub. Act 79-1455 (eff. Sept. 30, 1976) (adding Ill. Rev. Stat. 1977, ch. 120, ¶ 722a). In contrast to the pre-expiration notice provision, this new provision stated that a purchaser or his assignee shall not be entitled to a tax deed unless he delivered the notice provided for therein within six months after a sale. Pub. Act 79-1455 (eff. Sept. 30, 1976) (adding Ill. Rev. Stat. 1977, ch. 120, ¶ 722a). Thus, this new notice was to be given prior to the pre-expiration notice and was also to be delivered to the county clerk to be given to the party in whose name the taxes were last assessed. Pub. Act 79-1455 (eff. Sept. 30, 1976) (adding Ill. Rev. Stat. 1977, ch. 120, ¶ 722a). Representative Samuel Maragos stated that the purpose of the tax deed procedures was to ensure that "any home owner whose property is being taken away by the foreclosure procedures of a tax deed that he be given additional time and notice." 79th Ill. Gen. Assem., House Proceedings, June 7, 1976, at 33 (statement of Representative Maragos). In addition to adding the post-sale notice provision, this public act increased the redemption period under certain circumstances and made certain changes to the manner of notice provided for in the pre-expiration notice provision. Notably, the tax deed provision was not amended by this public act.

¶ 32       Shortly thereafter, the post-sale notice provision was amended to provide the current redemption amount to the tax assessee. Pub. Act 80-1006 (eff. Oct. 1, 1977) (amending Ill. Rev. Stat. 1977, ch. 120, ¶ 722a). The provision also required the notice to inform the assessee that the redemption amount "is subject to increase at six month intervals from the date of sale" and that the assessee was to contact the county clerk regarding the precise amount owed prior to redeeming. Pub. Act 80-1006 (eff. Oct. 1, 1977) (amending Ill. Rev.

Stat. 1977, ch. 120, ¶ 722a). In addition, notice was now required to be given to the assessee within five months, rather than six months, of the sale. Thus, it is clear that the legislature's goal was to provide all necessary information to the owner to assist and encourage a tax assessee to redeem his property. The post-sale notice provision was the only provision amended by this public act. Following the enactment and amendment of the post-sale notice provision, any amendments to the tax deed provision were merely technical in nature or otherwise made changes that were unrelated to the "strict compliance" language.

¶ 33     Finally, the Revenue Act of 1939 was repealed and its provisions were recodified under the Code. Pub. Act 88-455 (eff. Jan. 1, 1994) (repealing 35 ILCS 205/241a, 263, 266 (West 1992), enacting 35 ILCS 200/22-5 *et seq.* (West 1994)). The public act reorganized certain provisions but was not intended to make any substantive changes. See 88th Ill. Gen. Assem., Senate Proceedings, April 22, 1993, at 286; 88th Ill. Gen. Assem., House Proceedings, May 21, 1993, at 120, 165. The post-sale notice requirement (35 ILCS 205/241a (West 1992)) simply became section 22-5 (35 ILCS 200/22-5 (West 1994)). In contrast, the single statutory section that had embodied the pre-expiration notice provision as well as related matters (35 ILCS 205/263 (West 1992)) was divided and recodified into multiple sections (35 ILCS 200/22-10, 22-15, 22-20, 22-25 (West 1994)). The former tax deed provision (35 ILCS 205/266 (West 1992)) was similarly divided and recodified into several sections (see 35 ILCS 200/22-30, 22-40, 22-45, 22-55 (West 1994)). Notably, the requirement of strict compliance with the pre-expiration notice provision formerly found in section 263 was included in section 22-40. In place of the now-repealed section 263, section 22-40 stated that "[t]he court shall insist on strict compliance with Section 22-10 through 22-25," *i.e.*, those sections which were formerly embodied in section 263. See 35 ILCS 200/22-40 (West 1994).

¶ 34     We find that our review of the aforementioned legislative history supports respondents' position that strict compliance, rather than substantial compliance, was intended by the legislature. The General Assembly transcripts confirm that the purpose of the section 22-5 post-sale notice provision was to provide a tax assessee, who is usually the property owner, with additional notice which conveys all necessary information. To achieve this goal, the legislature has indicated that a tax purchaser will not be entitled to a tax deed unless he gives the notice required. Permitting a tax purchaser to be entitled to a deed despite not fully complying with section 22-5 would defeat the legislature's intent. Section 22-5 "lend[s] credence to the idea that tax purchasers should not be allowed to disclose only that information they deem relevant." *In re Application of the County Collector*, 295 Ill. App. 3d 703, 709 (1998) ("[a]dditional support for our position may be found in the very fact that the General Assembly actually prescribed the precise form and manner in which notice must be given").

¶ 35     In contrast, not only did the addition of the "strict compliance" language to the tax deed provision memorialize what was already the law, but more importantly, it came before the enactment of the post-sale notice provision of section 22-5. *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 282 (1994) (when choosing between two directly conflicting statutes, the more recent enactment will generally prevail as the later expression of the legislature's intent). In addition, it appears that following the enactment of the post-sale

notice provision, the general assembly has never revisited the substance of the "strict compliance" language found in the tax deed provision. This is not surprising. Not only has more than a century passed since our supreme court found that the pre-expiration notice provision requires strict compliance, but neither the parties nor this court have found a single case since the enactment of the post-sale notice provision in 1976 in which the standard of compliance required with this notice provision was at issue. Accordingly, we find no insight is to be gained from the language of section 22-40, which explicitly requires strict compliance with the notice found in section 22-10, but says nothing regarding section 22-5.

¶ 36     Petitioner contends for the first time in its reply brief that requiring strict compliance in this instance will require strict compliance with other provisions of the Code providing that an individual "shall" give notice. See 35 ILCS 200/21-110, 21-135 (West 2008). This argument is waived. See Ill. S. Ct. R. 341(h)(7) (eff. Sept. 1, 2006) ("[p]oints not argued are waived and shall not be raised in the reply brief"). Waiver aside, without interpreting statutes that are not before us, we simply note that our holding is not merely based on the word "shall" appearing in section 22-5; rather, it is based on the language of section 22-5 indicating the result of failing to do what is specified by the statute. A tax deed petitioner must do as required by the statute "*[i]n order to be entitled to a tax deed.*" (Emphasis added.) 35 ILCS 200/22-5 (West 2006). It would be absurd to find the legislature intended a purchaser to be entitled to a tax deed even where he had not done as required by the statute. Petitioner further contends that strict compliance should not be required because the post-sale notice provided by section 22-5 does not fall within the context of a tax deed proceeding. Prior to the enactment of the Code, this provision fell under the "Sale of Real Property for Delinquent Taxes" heading of the Revenue Act, whereas the pre-expiration notice and tax deed provision fell under the "Tax Deeds, Redemptions, Sales in Error" heading of the Act. 35 ILCS 205/241a, 263, 266 (West 1992). Now, however, all three provisions appear under article 22 of the Code, titled, "Tax Deeds and Procedures." 35 ILCS 200/22-5, 22-10, 22-40 (West 2006); 35 ILCS 200/22-5, 22-10, 22-40 (West 2008). Accordingly, the Code itself refutes petitioner's argument. That a petition for a tax deed has not been filed at the time the section 22-5 notice is served does not change the result.

¶ 37     We also reject petitioner's assertion that the notice provision of section 22-10 requires a higher standard of compliance than that of section 22-5 because at the time the 22-10 notice is served, the threat of property loss is imminent. We find that not only is section 22-5 intended to assist property owners in redeeming their property before interest accumulates, but that implicit in the enactment of the post-sale notice provision is the recognition that a tax assessee should be given earlier notice and thus, additional time to make arrangements to preserve property rights. This court has recognized that persons of limited education or knowledge may overlook tax payments or, in good faith, be unable to make the necessary payments. See *In re Application of the County Collector*, 295 Ill. App. 3d at 708. Although section 22-10 provides interested parties notice between three and six months before the redemption period expires, the frequently much earlier notice of section 22-5 protects impoverished and unsophisticated parties who need additional time to acquire the necessary funds for redemption. Accordingly, the difference between the purposes of these notice

provisions does not indicate that the legislature deemed one provision to be more important than the other.

¶ 38        Here, petitioner failed to strictly comply with section 22-5. The notice form set forth in this section requires the date on which the redemption period will expire to be included in three different places. Petitioner listed December 21, 2008, as the redemption expiration date in all three places. At the time this notice was submitted to the clerk's office, the redemption period had already been extended to February 9, 2009. Accordingly, the date included in the form was incorrect. We note that the trial court indicated a petitioner has no obligation to notify a tax assessee that the redemption period has been extended. See Jeffrey S. Blumenthal & David R. Gray, Jr., *Extension of the Redemption Period*, Real Estate Taxation § 11.4 (Ill. Inst. for Cont. Legal Educ. 2008) (an extension of the redemption period may be obtained by filing written notice with the county clerk but it is unnecessary to give other parties notice of the extension). To be clear, we are not holding that section 21-385 (35 ILCS 200/21-385 (West 2006)) requires a tax purchaser to notify anyone other than the county clerk of the extension itself but, rather, find only that, whereas here, the redemption date had been changed prior to submitting the section 22-5 notice, that section requires that the redemption expiration date included in the form be accurate, *i.e.*, the current expiration date. Where the purchaser has extended the redemption period prior to the issuance of the section 22-5 take notice, we find it entirely reasonable to charge him with knowledge of his own actions. Not only should the purchaser have known that the redemption date had been changed, but his assignee, the ultimate beneficiary of obtaining a tax deed for a property based on the payment of one year's real estate taxes, should properly be charged with ensuring that both he and his predecessor have taken all necessary steps to perfect the right to a tax deed.

¶ 39        Even assuming the original redemption date was sufficient to satisfy section 22-5, the date provided by petitioner was nonetheless incorrect. It is undisputed that Garcia as tax assessee had two years and six months in which to redeem the property and that the final day would ordinarily have fallen on Sunday, December 21, 2008. When the final day is a Sunday, however, it is excluded from calculating the time period in which the property may be redeemed. See 5 ILCS 70/1.11 (West 2006). Accordingly, the original redemption date was Monday, December 22, 2008.

¶ 40        Petitioner contends it would be nonsensical and place additional burdens on the tax purchaser to be required to ascertain weekend and holiday dates 2½ years in the future. As stated, we find this is precisely what the legislature intended. We are confident that the minuscule burden of requiring a tax purchaser to consult a calendar will not deter individuals from becoming tax purchasers. See also *In re Application of the County Collector*, 295 Ill. App. 3d at 709 ("[w]e see no discernible inconvenience to tax purchasers in requiring them to fully disclose any certificate number prefix"); *Gage v. Davis*, 129 Ill. 236, 240 (1889) ("[t]he provision of the statute requiring the purchaser at the tax sale, or his assignee, to notify the person in possession of the lands when the time of redemption will expire, is imperative, and a notice which specifies a wrong date cannot be regarded as any notice whatever, within the meaning of the statute"). Finally, having determined that strict compliance is required, we need not consider petitioner's argument that Garcia failed to

demonstrate she was prejudiced by the erroneous date. See *In re Application of the County Collector,* 295 Ill. App. 3d at 708 (under a strict compliance standard, prejudice is presumed).

¶ 41                                    III. SECTION 22-10 NOTICE

¶ 42        Respondents assert that even if the section 22-5 notice was proper, petitioner was still not entitled to a tax deed because it failed to make a diligent inquiry and effort to identify and serve Deutsche and Indy Federal with section 22-10 notice. Diligence is a factual question and we will not reverse the trial court's determination unless it is against the manifest weight of the evidence. *Gacki v. La Salle National Bank*, 282 Ill. App. 3d 961, 964 (1996).

¶ 43        As stated, section 22-40 of the Code provides that "[i]f the redemption period expires and the property has not been redeemed and *** the notices required by law have been given *** and the petitioner has complied with all the provisions of law entitling him or her to a deed, the court shall so find and shall enter an order directing the county clerk on the production of the certificate of purchase and a certified copy of the order, to issue to the purchaser or his or her assignee a tax deed. *The court shall insist on strict compliance with Section 22-10 through 22-25*." (Emphasis added.) 35 ILCS 200/22-40(a) (West 2008). In addition, section 22-10 provides that "[a] purchaser or assignee shall not be entitled to a tax deed to the property sold unless *** he or she gives notice of the sale and the date of expiration of the period of redemption to the *owners, occupants, and parties interested in the property, including any mortgagee of record,* as provided below." (Emphasis added.) 35 ILCS 200/22-10 (West 2008). Section 22-15 states, in pertinent part, as follows:

> "The purchaser or his or her assignee shall give the notice required by Section 22-10 by causing it to be published in a newspaper as set forth in Section 22-20. In addition, the notice shall be served by a sheriff *** upon owners who reside on any part of the property sold by leaving a copy of the notice with those owners personally. ***
>         ***
>     The same form of notice shall also be served, in the manner set forth under Sections 2-203, 2-204, 2-205, 2-205.1, and 2-211 of the Code of Civil Procedure, upon all other owners and parties interested in the property, *if upon diligent inquiry* they can be found in the county, and upon the occupants of the property.
>         ***
>     When a party interested in the property is a trustee, notice served upon the trustee shall be deemed to have been served upon any beneficiary or note holder thereunder unless the holder of the note is disclosed of record.
>         ***
>     If any owner or party interested, *upon diligent inquiry and effort* cannot be found or served with notice in the county, then the person making the service shall cause a copy of the notice to be sent by registered or certified mail, return receipt requested, to that party at his or her residence, if ascertainable." (Emphasis added.) 35 ILCS

-14-

200/22-15 (West 2008).

¶ 44 The petitioner for a tax deed carries the burden of demonstrating that it complied with the Code and provided the requisite notice. *In re Application of Ward*, 311 Ill. App. 3d 314, 319 (1999). The Code requires a tax purchaser to serve notice upon all individuals holding an interest in the property if their identities can be discovered through diligent inquiry. *Banco Popular v. Beneficial Systems, Inc.*, 335 Ill. App. 3d 196, 212 (2002). A diligent inquiry is that inquiry which a diligent person who is intent on discovering a fact would reasonably make. *Banco Popular*, 335 Ill. App. 3d at 213; *In re Application of the County Collector for Judgment & Order of Sale Against the Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1987 & Prior Years*, 278 Ill. App. 3d 168, 172 (1996). The inquiry must be made in good faith to ascertain the truth. *In re Application of County Treasurer*, 32 Ill. App. 3d 161, 165 (1975); but *cf. In re Application of the County Collector*, 167 Ill. App. 3d 521, 525 (1988) ("a person who by an unrecorded document not in the chain of title has assumed indebtedness secured by a mortgage on the property does not come within those limits [of persons interested] even if the holder of the certificate of purchase knows of that assumption of the mortgage indebtedness"). In addition, a tax purchaser has failed to act with minimal diligence if he has not made reasonable efforts to notify all persons whose interest may reasonably be inferred from the public records regarding the property's ownership. *In re Application of the County Treasurer*, 347 Ill. App. 3d 769, 777, 778 (2004) (citing *Payne v. Williams*, 91 Ill. App. 3d 336, 341-42 (1980)); see also Jeffrey S. Blumenthal & David R. Gray, Jr., *Notices Required by §§22-10 Through 22-30–Within Six to Three Months Prior to the End of the Redemption Period*, Real Estate Taxation § 11.6(*l*), at 1113 (Ill. Inst. for Cont. Legal Educ. 2008) ("The authors suggest that tax deed petitioners should serve notice on all parties even remotely interested in the property, as revealed by a diligent inquiry. In other words, tax deed petitioners should never do minimum compliance.").

¶ 45 We begin by considering what information Glickman knew from looking at the recorded mortgage documents. Both mortgage documents identified MILA as the lender and stated that MERS, the mortgagee, was acting solely as nominee for not only the lender, but also for the lender's successors and assigns. Thus, these documents clearly identify interests disclosed of record in MERS, MILA, MILA's successors and MILA's assigns. At a minimum, interests held by MILA's successors and assigns can be inferred from the record. That no successor or assign existed when the documents were drafted and thus, none were identified by name does not change the result. See *In re Application of Ward*, 311 Ill. App. 3d at 316-17, 319-20 (where a recorded plat of a subdivision showed the property was held for the benefit of unnamed nearby homeowners, such homeowners had an interest in the property and the tax petitioner failed to make a diligent inquiry to ascertain their identities and serve them with notice). In addition, Glickman himself acknowledged at trial that MILA may have had a successor lender.

¶ 46 Glickman, an attorney and well-seasoned veteran of these somewhat obscure tax deed proceedings, testified that the purpose of MERS was to allow for the free assignment of mortgage notes without having to record assignments. He acknowledged that MERS was formed to cover the notice gap for documents that were not being recorded. Contrary to

petitioner's suggestion, Glickman's testimony indicates that MERS was formed not to substitute the notice ordinarily provided to noteholders and lenders, but rather, to supplement such notice. In addition, Glickman, an individual who is familiar with MERS, would certainly be alerted that other interests are likely involved upon seeing that this was a MERS mortgage. In any event, we find that the mortgage documents' reference to the lender, its successors and assigns as well as the mortgagee's indicative name, Mortgage Electronic Registration System, would alert even a less sophisticated tax petitioner that interests were likely held by entities other than MERS and MILA. While we agree that an open-ended inquiry to find the names of interested parties is not required, we nonetheless find that a person determined to discover the names of the individuals holding the interests disclosed of record would have utilized the phone number and address listed for MERS which was in fact disclosed of record. Bluntly put, we find it curious that Glickman would telephone Garcia but find it unnecessary to telephone MERS. Although Glickman testified he was previously unaware of the MIN on the mortgage documents, he may have learned the purpose of the MIN had he contacted MERS.

¶ 47 We also note that testimony was presented regarding certain chapters of the "Real Estate Taxation" IICLE authored by Karlen and Slutzky. We find that the following provision of the most recent edition constitutes sound advice:

> "Noteholders should be traced in the following situations.
>
> *** [W]hen the record interest under a mortgage is held by Mortgage Electronic Registration Systems, Inc. (MERS), the current noteholder may be ascertained. The original lender will register its note with MERS and assign its mortgage interest to MERS, who will act as a trustee for the registered noteholder. If the lender subsequently assigns its note, it will register the assignment with MERS, who will continue to act as trustee–now for the newly registered assignee. A tax deed petitioner may obtain the name of the current servicing agent by contacting MERS at 800/646-6377 or www.mers-servicerid.org. The requester must furnish an 18-digit mortgage identification number (MIN) property address, or borrower details in order to obtain this information. The MIN should appear on the recorded mortgage or on the recorded assignment to MERS. The servicing agent may provide the identity of the noteholder, but it also may not. In addition to serving notice on the noteholder if its identity is discovered, the tax deed petitioner should also serve the required notices on MERS. The tax deed petitioner should contact MERS for information on how to serve notice on MERS. For more information on MERS, visit the Web site at www.mersinc.org." Blumenthal, *supra* § 11.6(*l*), at 1113-14.

¶ 48 The record further rebuts petitioner's assertion that by using a MERS mortgage parties agree not to make their interest in the property known. Not only did the mortgage documents identify MILA by name, but they identified an interest to be held by MILA's successors and assigns. As stated, petitioner did not contact MERS in this instance and as a result, we cannot say with absolute certainty what information petitioner would have learned had it done so. Nonetheless, it appears that a reasonable probability exists that MERS would have revealed the name of the current servicer and/or noteholder. The burden of proving compliance with

-16-

the Code belongs to petitioner and it should not reap the benefit of failing to act where a diligent party under like circumstances would have.

¶ 49 We reject petitioner's argument that Indy Federal, OneWest's predecessor, would not be entitled to notice because it was the servicer. The Code requires only that a party have an "interest" in the subject property to be entitled to notice. 35 ILCS 200/22-10 (West 2008). As petitioner acknowledges in its reply brief, Indy Federal "had, at one point or another, an interest in the subject property by virtue of two recorded mortgages recorded as an encumbrance against the subject property." Petitioner does not dispute that Indy Federal's role as a servicer was to preserve Deutsche's interest in the property and pay property taxes. In addition, petitioner concedes that Indy Federal "has all the rights, responsibilities and duties as that of the true holder of the note, Deutsche Bank, including the right to redeem." Thus, Indy Federal clearly had an interest in the property. If petitioner would have learned of Indy Federal's existence by calling MERS, we do not believe petitioner could disavow such knowledge merely because Indy Federal's interest was not of record. Accordingly, we add to the IICLE's guidance that where the servicer's identity is discovered, the servicer will ordinarily be entitled to notice.

¶ 50 Relying on section 22-15, petitioner further contends that serving notice to MERS, which is akin to a trustee, constitutes service on the noteholder, *i.e.*, the beneficiary. See 35 ILCS 200/22-15 (West 2008) ("[w]hen a party interested in the property is a trustee, notice served upon the trustee shall be deemed to have been served upon any beneficiary or note holder thereunder *unless the holder of the note is disclosed of record*" (emphasis added)). The reason for this trustee provision of section 22-15 is that the beneficiary is not usually discoverable of record upon a diligent search. See *Gacki*, 282 Ill. App. 3d at 964. Notwithstanding the aforementioned sound advice provided by the IICLE publication, we question its characterization of MERS as a "trustee." See *Mortgage Electronic Registration Systems, Inc. v. Estrella*, 390 F.3d 522, 525 (7th Cir. 2004) ("[A]s far as we can see MERS is not a trustee. It is a nominee only, holding title to the mortgage but not the note."). We also find the purpose of this statutory provision would not be fulfilled if applied to MERS mortgages because it appears that a reasonable probability exists that the noteholder would be discoverable through contacting MERS with the information contained in the record. Assuming MERS is properly characterized as a trustee, here, the original noteholder, MILA, was disclosed of record and, thus, this provision of section 22-15 does not apply. Assuming further still that notice to MERS constituted notice to Deutsche the ultimate noteholder, it did not constitute notice to Indy Federal. Petitioner was not excused from its obligation to make a diligent inquiry and effort to find and serve all interested parties, including Indy Federal, merely because MERS forwarded the notice received to Indy Federal. See *Gacki*, 282 Ill. App. 3d at 965 (a party's actual knowledge of proceedings does not obviate a tax petitioner's obligation to attempt personal service).

¶ 51 We agree with the trial court's finding that the best way to receive notice is to record the document from which one's interest was obtained. As stated, however, a petitioner must make a diligent inquiry and effort to notify parties whose interest may reasonably be *inferred* from the public record. See *In re Application of the County Treasurer*, 347 Ill. App. 3d at

771-72, 778-79 (where an interest belonging to the property owner's spouse could be inferred from a properly recorded instrument, it constituted a recorded interest within the meaning of section 22-45). Where, as here, an experienced attorney, who was familiar with MERS mortgages, conducted the inquiry on petitioner's behalf and had reason to infer from both recorded documents as well as experience that MILA's interest was reasonably likely to have been conveyed to a successor with an interest in the property but did not utilize the contact information provided in the recorded documents to obtain further information, the trial court's finding that petitioner acted with due diligence is against the manifest weight of the evidence.

¶ 52      Finally, although neither Indy Federal, OneWest nor Deutsche is an entity related to MILA and it was revealed after the notice-serving period that MILA had no interest in the subject property, we question whether a petitioner intent on serving notice to MILA, which petitioner initially believed was an interested party, would accept defeat following the nominal steps taken here. Glickman concluded that once MILA withdrew its foreign registration in Illinois, petitioner no longer had an obligation to serve MILA with notice, a conclusion for which neither Glickman nor petitioner has provided legal authority. We note, however, that section 22-15 of the Code States that if a "party interested, upon diligent inquiry and effort *cannot be found or served with notice in the county*, then the person making the service shall cause a copy of the notice to be sent by registered or certified mail, return receipt requested, to that party at his or her residence, if ascertainable." (Emphasis added.) 35 ILCS 200/22-15 (West 2008). We find it curious that despite Glickman's determination that MILA's lack of registration in Illinois eliminated its interest, Glickman decided to *gratuitously* serve MILA. It is also perplexing that having mailed notice to MILA, Glickman did not check the court file to see if the notice was received. We cannot agree that a diligent petitioner having information that MILA had withdrawn its Illinois registration, that MILA had not received the mailed notice and that MILA had a forwarding address would do nothing further, despite having approximately two months left in which to serve notice. Compare *Banco Popular*, 335 Ill. App. 3d at 212 (a diligent inquiry is that inquiry which a diligent person who is intent on discovering a fact would reasonably make), with *In re Application of the County Collector*, 225 Ill. 2d 208, 223-25 (2007) (citing *Jones v. Flowers*, 547 U.S. 220, 227-36 (2006) (as a matter of *due process*, upon learning that the owner had not received notice, the State should have taken further reasonable steps to notify owner, but an open-ended search such as examining a telephone book was not required)). Notwithstanding petitioner's conduct in regard to MILA, petitioner failed to act with due diligence.

¶ 53      Having determined that petitioner failed to comply with section 22-5 and failed to demonstrate that it had exercised due diligence in serving the notice set forth in section 22-10, we find the trial court properly denied petitioner's application and petition for a tax deed.

¶ 54      For the foregoing reasons, we affirm the judgment.


¶ 55      Affirmed.